1

2

3

4

5

6

7

8                       IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10    BRADFORD G. BURBINE,

11              Petitioner,                No. CIV S-04-1691 LKK EFB P

12        vs.

13    A. K. SCRIBNER, WARDEN,              ORDER AND
                                           FINDINGS & RECOMMENDATIONS
14              Respondent.
      _____/

15

16        Petitioner is a state prisoner proceeding through counsel with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges an October 31, 2001

18    judgment of conviction entered against him in the Solano County Superior Court on one count of

19    continuous sexual abuse of a child under the age of 14, in violation of Cal. Penal Code § 288.5;

20    and one count of committing a lewd act upon a child under the age of 14 years, in violation of

21    Cal. Penal Code § 288(a).[1]  He seeks relief on the grounds that: (1) he was denied due process

22    and the right to a fair trial when the trial court ruled that the prosecutor could introduce

23    inadmissible impeachment evidence; (2) his trial counsel rendered ineffective assistance; (3) he

24    was denied due process and the right to confront the witnesses against him when the trial court

25    _____

26        [1]  Petitioner was convicted of an additional count of a violation of Cal. Penal Code
      § 288(a), but that conviction was reversed on appeal.  Pet., Ex. C.

1

admitted the hearsay testimony of the mother of one of the victims; (4) he was denied the right to notice of one of the charges against him; (5) he was denied due process as a result of the cumulative impact of the errors of his trial counsel; and (6) the trial court lacked jurisdiction to increase his sentence and committed multiple instances of sentencing error.  Petitioner has also filed a request for evidentiary hearing.  Upon careful consideration of the record and the applicable law, the undersigned denies the petitioner's request for an evidentiary hearing and recommends that petitioner's application for habeas corpus relief be denied.

## I.      Procedural  and Factual Background[2]

> During the summer of 1997, D.H., a four-year-old boy, spent the weekdays with his grandparents while his mother was at work. His grandparents lived on Plumb Street in Vacaville.  Appellant and his family have also lived on Plumb Street in Vacaville for at least 16 years.  While staying with his grandparents, D.H. sometimes went to appellant's house to see his big rig truck.  On August 17, 1997, D.H. told his mother that appellant was his friend because he gave him candy.  After his mother responded that "you can't like someone because he gave [you] candy," D.H. told her that appellant also "liked to pull his pants down."  D.H.'s mother then asked what happened when his pants were pulled down, and D.H. pointed to his penis and answered that appellant "liked to tickle him."  His mother called the police.  She also told a neighbor on Plumb Street, Mallory D., who had a then 10-year-old son, J.V.
>
> When Mallory D. heard about D.H.'s statements, her son J.V. was on a trip with appellant in his truck.  J.V. often went with appellant on trips in his truck, which had bunk beds in the back where appellant and J.V. slept.  When J.V. returned, his mother confronted him with what D.H.'s mother had told her.  J.V. "became very evasive, and he just looked and he said no."  She

---

[2]  This factual summary is divided into two parts.  The first part is drawn from the April 24, 2001, unpublished opinion by the California Court of Appeal for the First Appellate District at pgs. 2-5, appended as Exhibit C to the petition (hereinafter Opinion 1).  This opinion was issued after petitioner filed his first direct appeal, which resulted in the reversal of one of petitioner's convictions and a remand for resentencing.  The second part of the summary is drawn from *People v. Burbine*, 106 Cal.App.4th 1250, 1254-1255 (2003), at pgs. 2-4, appended as Exhibit D to the petition (hereinafter Opinion 2).  That opinion was issued after petitioner filed an appeal of his sentence after remand.  This court presumes that the state court's findings of fact are correct unless petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).  Petitioner has not overcome the presumption with respect to the underlying events.  The court will therefore rely on the state court's recitation of the facts.

asked if appellant had ever touched him, which he initially denied. She then told J.V. that "the police wanted to talk to him and that they were going to put him on a lie detector machine, and if he wasn't being honest, they would know." J.V. became hysterical, hung on to her, and said "it was all his fault, that he didn't know how to tell [her] what [appellant] had been doing to him for a long time." J.V. said he had been afraid to tell her because he thought she would get mad, he didn't want to upset her and he was "real embarrassed." His mother contacted the police.

J.V. testified that he began spending time with appellant when he was about seven and a half years old. He would spend the night at his house, go to the movies or park, and go on trips. His mother approved of the relationship, thinking "it was wonderful that [J.V.] had found a male figure that he could relate with [and] . . . fill that void that he no longer had with his father." When J.V. spent the night at appellant's house, which was up to five times a week, he would sleep with appellant in his bed. Appellant's wife slept in a separate bedroom.

One evening while sleeping in appellant's bed, J.V. woke up in the middle of the night because he felt appellant's mouth on his penis. His pajama bottoms had been pulled down, and appellant was to his side "like we made a figure 'L'." This happened "between 10 or 25" times, beginning when he was about eight and a half years old. When J.V. woke up while this was happening, he would pull up his pants and "scoot away." Appellant also touched J.V.'s penis with his hands between 20 or 30 times. This also happened while he was asleep, and would wake him up.

Appellant did the same things to J.V. while they were on truck trips. J.V. went on about 35 truck trips with appellant, and appellant touched J.V.'s penis with his hand on about half of those trips. Appellant also touched J.V.'s penis with his mouth 10 to 20 times in the truck. Appellant never said anything to him while it was happening or afterwards. J.V. did not remember the incidents where appellant would put his mouth on J.V.'s penis until after he had been seeing a counselor. He told a police officer it was like having "a dream inside of a dream."

J.V. had a friend, R.L., who met appellant through J.V. They would go to appellant's house together and watch television. Appellant's wife was there sometimes, but she stayed in her own bedroom with the door closed. Appellant once let R.L. drive a car while he sat on appellant's lap.

During the summer of 1997, J.V. and R.L., then 11 years old, had a camp-out in appellant's backyard. R.L. took a bath at appellant's house that night, and appellant watched him bathe. The boys came inside during the night because they were cold. They tried to sleep on the couch, but could not because it was too hard. They ended

up sleeping in appellant's bed with him, with R.L. next to appellant and J.V. on the outside.  R.L. testified that nothing happened that night in bed, but that he did not recall if he had told a police officer that appellant tried to touch his penis in bed.  R.L. also testified that appellant had J.V. put a condom on, and then had R.L. try it on.  Appellant touched R.L.'s penis while the condom was on.  To the best of his recollection, this happened on the night of the camp-out.

During the summer of 1997, R.L. went to appellant's house at other times.  On occasions when he was at appellant's house, appellant reached inside R.L.'s pants "more than two times" and fondled his penis.  One incident occurred in appellant's living room when J.V. was not there.  On one of the days that appellant touched his penis, he also saw appellant touch J.V.'s penis.

A few weeks after he spent the night at appellant's house, R.L. told his mother that appellant was "weird because he walked around with his zipper unzipped and he wore no underwear . . . ."  A few moments later, he told his mother that appellant had touched him, after which she called the police.  R.L. initially told the police nothing happened because he was scared.

D.S. also met appellant through his friend J.V.  Once during the summer of 1997, when he was 11 years old, he went to appellant's house looking for J.V.  J.V. was not there, but appellant was.  D.S. walked into the garage and showed appellant some drawings he had done.  Appellant pulled up the leg of his shorts about three times and "flashed" D.S., exposing his penis.  D.S. left and never returned to appellant's home.  The first person he told about the incident was J.V.'s mother, after he overheard a conversation between her and his mother about "something that they had heard on the news."  He later told the police about the incident.

Appellant's defense was that the boys were lying to please their mothers, and that there was animosity between J.V.'s mother and the Burbine family.  J.V.'s mother was a friend of appellant's wife until 1996, when she obtained a restraining order against her because "she tried to hit my son with her car."  After the investigation of the charged incidents, she obtained a restraining order against appellant's adult children, Kimberly and Sean Burbine, because they were "stalking" her son and had thrown a firecracker in a wood pile in front of her house.

The defense also presented the testimony of appellant's son, daughter, and son-in-law, all of whom saw appellant with J.V. and didn't notice anything unusual.  The defense also introduced the testimony of Melani Hansen, a friend of Sean Burbine's.  She testified that she had been at the Burbine home on a number of occasions when D.H. was there.  In August or September of 1997, she observed an incident in which appellant asked D.H. "if he had

4

used the bathroom . . . [and] . . . felt, like, the side of his leg by his knee and told him he needed to go home and change."

Opinion 1 at 2-5.

Appellant Bradford Gary Burbine was found guilty by a jury of one count of continuous sexual abuse of a child (Pen.Code, § 288.5)[3] and two counts of committing a lewd act on a child ( § 288, subd. (a)).[4]  Each of the three counts involved a different victim. On the day of the original sentencing hearing, appellant submitted letters from his family and friends, to be considered in mitigation. The court declined to review the letters because they were not timely submitted.  Rejecting the prosecutor's contention that appellant should receive the aggravated term for the continuous sexual abuse count, the court sentenced appellant to the middle term of 12 years for that count, and added two consecutive terms of 2 years each, representing one-third the middle term for each of the lewd act counts, for a total prison term of 16 years.

Appellant filed an appeal and a habeas corpus petition, which we considered together in Burbine I.  Only three of the issues addressed in our prior opinion are relevant to the present appeal.[5] First, we held that the court's refusal to consider appellant's untimely letters in mitigation was not an abuse of discretion. Second, we held that even if appellant's counsel was ineffective in not presenting the letters in a timely fashion, there was no reasonable probability that consideration of the letters would have led to a lesser sentence, because the letters were premised on the view that appellant was not guilty, and thus were entitled to no weight in mitigation.

Third, and most significantly for the purpose of the present appeal, we accepted appellant's argument that his conviction on one of the lewd act counts was invalid, because the jury instructions on that count erroneously failed to require jury unanimity as to the particular act on which the conviction was based.  We therefore reversed the conviction on that count only, and remanded the case for resentencing.

---

[3]  All further statutory references are to the Penal Code unless otherwise noted.

[4]  The facts underlying appellant's convictions were set forth in our opinion on appellant's prior appeal and related habeas corpus petition. (*People v. Burbine* (April 25, 2001, A087714 & A092468) [nonpub. opn.] [ Burbine I ].)  They are summarized here only insofar as they are relevant to the issues raised on this appeal.

[5]  At appellant's request, we have taken judicial notice of the record and briefs in his prior appeal and related habeas corpus petition. (*See* Evid.Code, §§ 452, subd. (d)(1); 459, subd. (a).)

5

At the resentencing, the judge listed the materials he had reviewed in preparation for the hearing, and did not mention the letters in mitigation that appellant submitted for the original sentencing. When the judge asked whether there was anything else he should consider, appellant's counsel responded "No."

The prosecution's memorandum on resentencing requested that the court impose the upper term on both the principal and the subordinate counts, to run concurrently. At the hearing, appellant's counsel argued that the trial judge was precluded from reconsidering his original decision to impose the middle term on the continuous sexual abuse count, which had been designated as the principal term of appellant's sentence. The judge rejected this argument, reasoning that the original sentence had been "made up of inter-dependent [ sic ] components." He explained that he understood this court's remand to imply that he was "back to square one again" with regard to sentencing on the remaining counts.

The judge sentenced appellant to the same aggregate prison term originally imposed – 16 years – but reached this result by a different route than he had originally taken. Rather than imposing the middle term of 12 years for the continuous sexual abuse count, which he again selected as the principal term, he imposed the upper term of 16 years. He imposed the middle term of 6 years for the remaining lewd conduct subordinate term, but ordered it to run concurrently, rather than consecutively as it had in the original sentence.

In explaining his decision to impose the upper term on the principal term, the judge cited three aggravating factors. First, he noted that the term imposed for the subordinate count could have been consecutive (as, indeed, it had been on the original sentence), but that he was going to impose it concurrently. (*See* Cal. Rules of Court, rule 4.421(a)(7).)[6] Second, he stated that appellant's crimes had been "obviously planned and sophisticated" in that they involved "taking sexual advantage of young children with movies and buying them toys and other things . . . to insure that he remained in the child's good graces, . . . [and] to keep them from telling what is going on." (See rule 4.421(a)(8).) Finally, he noted that appellant "took advantage of a position of trust that he developed with these young children, taking them on rides on [appellant's big rig] truck, et cetera." (See rule 4.421(a)(11).)

Opinion 2 at 2-4.

////

---

[6] All further references to rules are to the California Rules of Court.

1    **II.     Analysis**

2         **A.  Standards for a Writ of Habeas Corpus**

3         Federal habeas corpus relief is not available for any claim decided on the merits in state

4    court proceedings unless the state court's adjudication of the claim:

5              (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law, as
6              determined by the Supreme Court of the United States; or

7              (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
8              State court proceeding.

9    28 U.S.C. § 2254(d).

10        Under section 2254(d)(1), a state court decision is "contrary to" clearly established

11   United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law

12   set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially

13   indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different

14   result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406

15   (2000)).

16        Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas

17   court may grant the writ if the state court identifies the correct governing legal principle from the

18   Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

19   case. *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

20   that court concludes in its independent judgment that the relevant state-court decision applied

21   clearly established federal law erroneously or incorrectly.  Rather, that application must also be

22   unreasonable."  Id. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not

23   enough that a federal habeas court, in its independent review of the legal question, is left with a

24   'firm conviction' that the state court was 'erroneous.'")

25        The court looks to the last reasoned state court decision as the basis for the state court

26   judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court reaches a

                                          7

decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d).  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

**B.  Petitioner's Claims**

**1.  Evidentiary Rulings**

Petitioner raises two challenges to evidentiary rulings made by the trial court.  Review of those rulings in this federal habeas proceeding is under a deferential standard.

**a.  Legal Standards**

Absent some federal constitutional violation, a violation of state law does not provide a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Accordingly, a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process.  *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  Habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that the error resulted in "actual prejudice," which is defined as a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**b.  Evidence of Prior Conduct**

Petitioner's first claim is that his right to due process and a fair trial were violated when the trial court ruled that he could be cross-examined about a prior conviction involving homosexual activity with an adult male.  Petitioner claims that he chose not to testify because of this ruling.  He explains that if he had testified, "he would have denied the (trial) charges, and there was no forensic evidence to contradict him."  Pet. at 4.

////

////

////

Petitioner raised this claim in his first appeal, filed in 2001.  The California Court of

Appeal rejected the claim, reasoning as follows:

> Appellant argues that the trial court in ruling prospectively that
> evidence of his arrest in 1990, for a lewd act in public involving
> another man and subsequent conviction,[7] would be admissible if
> appellant testified that he had no sexual interest in men.  He
> maintains this evidence was inadmissible under Evidence Code
> sections 1008 and 352 as "propensity" evidence that was more
> prejudicial than probative.
>
> The Attorney General correctly points out that "to raise and
> preserve for review the claim of improper impeachment with a
> prior conviction, a defendant must testify."  (*Luce v. United States*
> (1984) 469 U.S. 38, 43; *People v. Collins* (1986) 42 Cal.3d 378,
> 383-384.)  Here, after the court ruled on the prior conviction,
> appellant chose not to testify.  We address the issue, however,
> because appellant also argues both that the ruling denied him his
> constitutional right to testify and that his attorney was ineffective
> in failing to suggest ways he could tailor his testimony to avoid
> impeachment.
>
> Appellant first maintains that the trial court erred in concluding
> that evidence of his prior arrest and conviction could be admitted
> because it was inadmissible propensity evidence.  This argument
> fails at the outset because the evidence was offered only for
> impeachment purposes, and only in the event appellant testified
> that he was not sexually attracted to men.  The court initially ruled
> that evidence of appellant's conviction would not be admissible
> under Evidence Code sections 1108 and 352 because it was more
> prejudicial than probative.  During the defense case, appellant's
> trial counsel moved to prevent the prosecutor from asking him
> questions about his "sexual proclivities."  The prosecutor informed
> the court that appellant had told a detective investigating the case
> that he had never had sexual interest in anyone other than adult
> women.  The court ruled that if appellant chose to testify, the
> prosecutor could ask him questions about his sexual interests.  If
> appellant were to testify that he had no sexual interest in males, the
> court would allow evidence of the prior lewd act involving a man
> to be used for impeachment purposes.  As the court stated,
> "Otherwise, you are using this – my earlier analysis as a shield to
> perpetrate perjury, and that's not going to happen.  So I don't
> know what more I can say, but it seems to me that inquiry on
> cross-examination into your client's sexual behavior is relevant
> and admissible should he take the stand, because that's one of the

---

[7] Appellant pled to the lesser charge of disturbing the peace.

1     elements of this charge."[8]

2     While the prior lewd act would be more prejudicial than probative
      as propensity and character evidence, if appellant testified that he
3     had no sexual interest in males, it would then become probative of
      appellant's veracity.  Where a witness has made blanket denials, it
4     is proper to impeach that testimony with evidence of a specific act
      to the contrary because it is probative of the witness's credibility.
5     (*People v. Senior* (1992) 3 Cal.App.4th 765, 778-779.)  We find no
      error in conditionally admitting evidence of the prior lewd act for
6     impeachment purposes only.

7     Appellant next claims that this ruling "effectively" prevented him
      from testifying, violating his constitutional right to do so.  To the
8     contrary, appellant chose not to testify.  He could have testified
      and admitted a sexual interest in men, or he could have testified,
9     denied such an interest, and disputed the underlying factual basis
      for the Berkeley arrest.  The court's prospective ruling on what
10    would be proper impeachment did not deny appellant his right to
      testify.

11

12    Opinion 1 at 5-6.

13         In his claim before this court, petitioner is challenging the trial court's ruling that he

14    could be impeached with evidence of his prior conviction if he took the stand and denied ever

15    having a sexual interest in a man.  However, "[t]o raise and preserve for review the claim of

16    improper impeachment with a prior conviction, a defendant must testify."  *Luce v. United States*,

17    469 U.S. 38, 43 (1984); *United States v. Olano*, 62 F.3d 1180, 1206 (9th Cir. 1995).  The reason

18    for this rule is that, without a transcript of an actual in-court exchange, a reviewing court must

19    speculate as to the propriety of the cross-examination and/or any harm resulting therefrom.  As

20    the Supreme Court explained in *Luce*:

21         Any possible harm flowing from a district court's in limine ruling
           permitting impeachment by a prior conviction is wholly
22         speculative.  The ruling is subject to change when the case unfolds,
           particularly if the actual testimony differs from what was contained
23         in the defendant's proffer.  Indeed even if nothing unexpected

24    ─────────────────

25         [8] Appellant does not argue that questions about whether he had a sexual interest in males
      would have been improper, though he did so at trial.  The trial court ruled that the evidence was
      relevant to show absence of mistake or accident, given the incident involving appellant checking
26    D.H.'s pants ostensibly to see if they were wet.

1

happens at trial, the district judge is free, in the exercise of sound
judicial discretion, to alter a previous in limine ruling.  On a record
such as here, it would be a matter of conjecture whether the
District Court would have allowed the Government to attack
petitioner's credibility at trial by means of the prior conviction.

2

3

4

When the defendant does not testify, the reviewing court also has
no way of knowing whether the Government would have sought to
impeach with the prior conviction.  If, for example, the
Government's case is strong, and the defendant is subject to
impeachment by other means, a prosecutor might elect not to use
an arguably inadmissible prior conviction.

5

6

7

8    469 U.S. at 41-42.

9          Petitioner's description of his claim proves this point.  He agrees that "*if* he could

10   properly be asked about his interest in 'males,' and he denied that had such an interest, then he

11   might be impeached with evidence of the incident." Pet. at 22.  However, he argues that the

12   prosecutor could not properly have asked him on direct examination about his interest in males

13   because: (1) evidence that someone has a "propensity" to commit certain conduct "per se is not

14   admissible;" (2) any question whether he had a sexual interest in males would be "too broad a

15   question" because he was charged with molestation against male children and not males in

16   general; and (3) any question about his sexual interest in males would constitute improper

17   "impeachment on a collateral matter" because the prosecutor would be asking the question

18   simply to bring up the prior conviction.  *Id.* at 22-23.  In the alternative, petitioner argues that

19   there was "virtually no chance" that he would have been asked a proper question on direct

20   examination about a sexual interest in males because "if petitioner or his attorney were on the

21   ball, petitioner would not give such testimony, knowing that he would likely be impeached with

22   evidence of that incident." *Id.* at 23.  Finally, petitioner asserts that if he had testified "and

23   neither admitted nor denied an interest in men," the prosecutor would have been unable to

24   impeach him with evidence of his prior conviction.  *Id.* at 24.  Petitioner's speculation as to

25   which questions might have been asked if he decided to testify, and what his responses might

26   have been, does not allow the court to properly assess his claim and is insufficient to warrant

11

1  habeas corpus relief.  Under *Luce* and *Olano*, petitioner has waived his challenge to the trial

2  court's evidentiary ruling.

3          Even considered on the merits, the claim fails.  Petitioner's right to due process and a fair

4  trial were not violated by the trial court's ruling that his prior conviction for disturbing the peace

5  could be admitted for impeachment purposes.  In fact, petitioner concedes that such

6  impeachment might be appropriate, depending on what transpired once he testified.  *See* Pet. at

7  22, 23.  The trial court ruled, in essence, that evidence of petitioner's prior conviction could be

8  admitted to prevent him from committing perjury should he choose to take the stand.  This ruling

9  did not render petitioner's trial fundamentally unfair.  Petitioner has cited no case holding that

10 the introduction of his prior conviction under these circumstances would be irrelevant or

11 improper.  This court agrees with the California Court of Appeal that there was no constitutional

12 error "in conditionally admitting evidence of the prior lewd act for impeachment purposes only."

13 Opinion 1 at 6.[9]

14          The court also rejects petitioner's argument that the trial court's evidentiary ruling

15 prevented him from exercising his right to testify.  Petitioner states that once he was informed he

16 could be impeached with evidence of his prior conviction if he denied that he "liked boys," he

17 decided not to testify.  Pet. at 21.  He argues that it was critical that he testify because "he was

18

19          [9]  In federal court, "evidence of a prior conviction may be admitted for impeachment purposes if the probative value out-weighs the prejudicial effect of admission."  *United States v. Martinez-Martinez*, 369 F.3d 1076, 1088 (9th Cir. 2004).  When balancing the probative value of evidence of a defendant's prior convictions against the evidence's prejudicial effect, a reviewing court is to consider: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime  and the charged crime; (4) the importance of the defendant's testimony; and, (5) the centrality of the defendant's credibility."  *United States v. Browne*, 829 F.2d 760, 762-63 (9th Cir. 1987).  *See also United States v. Jimenez*, 214 F.3d 1095, 1098 (9th Cir. 2000).  If a prior conviction is found to serve a proper impeachment purpose, it may be admitted despite its similarity to the offense at issue.  *Martinez-Martinez*, 369 F.3d at 1088*; United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000); *Browne*, 829 F.2d at 763.  Further, "criminal defendants are not entitled to a false aura of veracity when they take the stand," and "when an accused elects to become a witness and testify in his own behalf, 'his credibility may be impeached, his testimony may be assailed, and is to be weighed as that of any other witness.'"  *United States v. Portillo*, 633 F.2d 1313, 1322 (9th Cir. 1980) (quoting *Reagan v. United States*, 157 U.S. 301, 305 (1895)).

the only witness who could refute the complainants' stories." *Id.*  However, petitioner is

speculating that he might have been asked whether he "liked boys."  Further, the trial court ruled

that petitioner could be impeached by his prior conviction only if he testified falsely.  The

content of petitioner's testimony was within his control.  The court also notes that one of the

exhibits attached to the petition is a letter from petitioner's trial counsel to petitioner's habeas

counsel.  Pet., Ex. E at consecutive p. 8.  Therein, trial counsel makes the following

representations:

> As you are aware, I advised the client that he would
> be subject to impeachment if he testified.  The court
> ruled that his prior statement to a police officer was
> admissible over my objection.  This in turn raised
> an issue of credibility and an issue of about [sic] his
> prior conduct, which was previously excluded.  In
> essence, the court held that if the defendant denied
> homosexual proclivities, it would allow the prior
> homosexual conduct evidence.  If he admitted
> homosexual tendencies, the prior conduct *may* be
> excluded.  We didn't discuss manipulating the
> testimony to avoid possible impeachment.  The
> client made the decision not to testify in court as he
> was about to take the stand.  I did not dissuade or
> encourage his decision.
>
> I advised the client that he could testify or not.  It
> was his decision and he understood the potential
> impeachment cross examination attack.

*Id.*  Counsel's statements clarify that petitioner was advised it was up to him whether to testify

and that he made an informed decision not to do so.  Petitioner chose not to testify because he

apparently believed that he stood to lose more by testifying, and therefore risking the admission

of his prior conviction, than by remaining silent.  As noted by the California Court of Appeal, he

could have made the opposite choice.  In light of these circumstances, petitioner cannot

demonstrate that he was "forced" by the court's ruling not to testify.  In any event, "[b]ecause an

accused's decision whether to testify 'seldom turns on the resolution of one factor,' . . . a

reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to

testify." *Luce*, 469 U.S. at 42.  Petitioner's exercise of his choice whether to testify under these

1  circumstances did not violate his constitutional rights.

2      For the foregoing reasons, petitioner is not entitled to habeas relief on his claims

3  concerning the admissibility of his prior conviction.

4                          **c. Hearsay Testimony**

5      Petitioner claims that he was denied his rights to due process and to confront the

6  witnesses against him when the trial court admitted the hearsay testimony of the mother of one

7  of the victims.  He argues that when his trial counsel objected to the admission of this testimony,

8  the judge should have "sustained the objection, held a hearing, and taken evidence on the

9  reliability of the statements."  Pet. at 38.  Petitioner contends that if the trial judge had done so,

10  he would have found the statements unreliable and "would then have seen it would be erroneous

11  to admit the hearsay testimony because it did not meet the statutory requirements for admission

12  set out in California Evidence Code section 1360."  *Id.*

13      The California Court of Appeal rejected this claim in its opinion on petitioner's first

14  appeal.  The court reasoned as follows:

15          Appellant claims that the court erred in admitting the portion of
           D.H.'s mother's testimony in which she stated that her son D.H.
16          pointed to his penis and told her that appellant "liked to pull his
           pants down . . . [and] . . . tickle him."  He argues that the
17          statements are inadmissible under Evidence Code section 1360 for
           three reasons.  He maintains that the court erred in failing to hold a
18          hearing, that the testimony did not have "sufficient indicia of
           reliability," and that D.H. was "essentially" unavailable for cross-
19          examination."

20          Evidence Code section 1360 provides in part that:  "In a criminal
           prosecution where the victim is a minor, a statement made by the
21          victim when under the age of 12 describing any act of child abuse
           . . . is not made inadmissible by the hearsay rule if all of the
22          following apply:  [¶] (1) The statement is not otherwise admissible
           by statute or court rule.  [¶] (2) The court finds, in a hearing
23          conducted outside the presence of the jury, that the time, content,
           and circumstances of the statement provide sufficient indicia of
24          reliability.  [¶] (3)  The child either: [¶] (A) Testifies at the
           proceedings.  [¶] (B) Is unavailable as a witness, in which case the
25          statement may be admitted only if there is evidence of the child
           abuse or neglect that corroborates the statement made by the
26          child."

                                    14

Here, appellant's trial counsel objected to the testimony of D.H.'s mother on hearsay and foundational grounds.  The trial court held an off-the-record discussion with counsel, and then allowed the testimony.  While there is no record of the factors considered by the trial court, "[a] ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto . . . ."  (Evid. Code, § 402, subd. (c).)  The court in *People v. Brodit, supra,* 61 Cal.App.4th 1312 considered a similar situation, in which the child victim told a number of witnesses that she had been molested.  The trial court held a hearing regarding the testimony of only one of the witnesses, and "[n]o further section 402 hearings were requested or held."  (*Id.* at p. 1328.)  Nevertheless, the *Brodit* court considered the indicia of reliability of the evidence and concluded that the statements made by the victim to all of the witnesses were properly admitted.  (*Id.* at pp. 1328-1330.)

We likewise consider the indicia of reliability of D.H.'s statement to his mother.  The *Brodit* court utilized the factors enumerated by our Supreme Court in a case involving a judicially created hearsay exception for child dependency cases modeled, in part, on the statutory requirements of Evidence Code section 1360.  (*In re Cindy L.*) (1997) 17 Cal.4th 15, 29-30.)  Those factors are:  "(1) spontaneity and consistent repetition; (2) mental state of the declarant; (3) use of terminology unexpected of a child of similar age; and (4) lack of motive to fabricate."  (*People v. Brodit, supra*, 61 Cal.App.4th at pp. 1329-1330, citing *In re Cindy L., supra,* 17 Cal.4th at pp. 29-30.)

Here, D.H. spontaneously made the statement to his mother that appellant was his friend because he gave him candy.  When his mother responded that giving candy did not make someone your friend, D.H. volunteered that appellant also liked to pull his pants down.  His mother asked the non-leading question, "what happened when [your] pants were pulled down?"  D.H. pointed to his penis and responded that appellant would tickle him.  The series of statements were spontaneously made, even though the last one was in response to a question.  D.H. was not being questioned about a suspected incident, but was simply conversing with his mother.  Likewise, D.H. had no motive to fabricate.  He considered appellant to be his friend, and was telling his mother some things that, in his experience, "friends" do.  D.H. obviously had no idea that his revelation would result in any sort of recrimination for his "friend."  His lack of awareness of the inappropriateness of the behavior and his description of it as "tickling" demonstrates that his mental state was one of complete innocence, with no motive to fabricate.  Because the record demonstrates sufficient indicia of reliability, we find that the testimony was properly admitted.

Appellant also claims that Evidence Code section 1360, both "generally, and as applied [here]," is an unconstitutional deprivation of his right to confront witnesses.  We reject this

1    argument first because D.H. testified and was available for cross-
     examination, even though the six-year-old could not remember the
2    incident which occurred about two years earlier.  The
     confrontation clause of the Sixth Amendment "includes no
3    guarantee that every witness called by the prosecution will refrain
     from giving testimony that is marred by forgetfulness, confusion,
4    or evasion.  To the contrary, the Confrontation Clause is generally
     satisfied when the defense is given a full and fair opportunity to
5    probe and expose these infirmities through cross-examination . . .
     ." (*Delaware v. Fensterer* (1985) 474 U.S. 15, 21-22.)
6    Appellant's trial counsel had the opportunity to cross-examine
     D.H., and chose not to.  The six-year-old's inability to remember
7    anything about the incident certainly could have been exploited
     effectively on cross-examination.  We find no violation of the
8    confrontation clause.

9    Opinion 1 at 8-10.

10        Petitioner claims that the admission of D.H.'s statements through the testimony of his

11   mother did not meet the statutory requirements for admission set forth in Cal. Evid. Code § 1360

12   and violated his rights to due process and confrontation of the witnesses against him. Pet. at 38.

13   He also claims that the trial court should have held a hearing to determine the reliability of the

14   statements made by D.H. to his mother. *Id.* at 41-42.  Petitioner argues that D.H. was essentially

15   unavailable for cross-examination because he was unable to remember any acts of molestation or

16   any of his prior statements to his mother.

17        The state appellate court's conclusion that the testimony of D.H.'s mother met the

18   requirements for admissibility set forth in Cal. Evid. Code § 1360 is binding on this court. *See*

19   *Estelle*, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or

20   application of state law); *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are

21   "bound by a state court's construction of its own penal statutes"); *Oxborrow v. Eikenberry*, 877

22   F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas court must defer to the state court's

23   construction of its own penal code unless its interpretation is "untenable or amounts to a

24   subterfuge to avoid federal review of a constitutional violation").  Accordingly, petitioner's

25   arguments regarding the trial court's failure to comply with the requirements of that code section

26   should be rejected.

1      Petitioner's claim that Cal. Evid. Code § 1360 is unconstitutional as applied, in violation

2   of his right to confrontation, should also be denied.  D.H. testified at trial and was subject to

3   cross-examination.  For this reason, even though the trial court did not explain on the record

4   whether there were adequate indicia of reliability to warrant admission of the statements of

5   D.H.'s mother, petitioner's rights under the Confrontation Clause were not violated.  *See*

6   *California v. Green*, 399 U.S. 149, 157-64 (1970) (the admission of hearsay statements did not

7   violate the defendant's Confrontation Clause rights because the declarant was available at trial

8   for cross-examination); *United States v. Valdez-Soto*, 31 F.3d 1467, 1470 (9th Cir.1994) ("We

9   are aware of no Supreme Court case, or any other case, which holds that introduction of hearsay

10  evidence can violate the Confrontation Clause where the putative declarant is in court, and the

11  defendants are able to cross-examine him").  This is true even though D.H. could not remember

12  the details of the abuse that he had described to his mother.  *See United States v. Owens*, 484

13  U.S. 554, 557 (1988) ("This Court has never held that a Confrontation Clause violation can be

14  founded upon a witness' loss of memory); *Delaware v. Fensterer,* 474 U.S. 15, 21-22 ("The

15  Confrontation Clause includes no guarantee that every witness called by the prosecution will

16  refrain from giving testimony that is marred by forgetfulness, confusion, or evasion . . . [t]o the

17  contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair

18  opportunity to probe and expose these infirmities through cross-examination, thereby calling to

19  the attention of the factfinder the reasons for giving scant weight to the witness' testimony");

20  *Valdez-Soto*, 31 F.3d 1467, 1470-71 (9th Cir.1994) (no violation of the Confrontation Clause

21  even though witness could not remember or recanted some of his earlier statements).  "[T]he

22  Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not

23  cross-examination that is effective in whatever way, and to whatever extent, the defense might

24  wish.'"  *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)(quoting *Fensterer*, 474 U.S. at 20

25  (emphasis added)).

26  ////

17

1    Petitioner's trial counsel made a tactical decision not to vigorously cross-examine D.H.

2    after he testified he couldn't remember details about the molestation.  In fact, petitioner used

3    D.H.'s lack of memory to his advantage in closing argument.  He argued that there was no

4    evidence that petitioner molested D.H. because D.H. "wouldn't testify" and "wouldn't say a

5    word about it."  (Reporter's Transcript on Appeal (RT) at 216-17.)  Because this court finds no

6    Confrontation Clause violation after an independent review of the record, the court concludes

7    that the state courts' decision with regard to petitioner's Confrontation Clause claim was not an

8    unreasonable application of United States Supreme Court law.

9    Petitioner's due process claim also fails.  Under the circumstances presented here, where

10   D.H. testified, and both he and his mother were available for cross-examination, the admission of

11   D.H.'s statements to his mother was not "so extremely unfair that its admission violates

12   fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990)

13   (internal quotation marks and citation omitted).  Thus, the state courts' conclusion that

14   petitioner's due process rights were not violated was not unreasonable under AEDPA.

15                         **2.  Ineffective Assistance of Counsel**

16   Petitioner claims that his trial counsel rendered ineffective assistance through numerous

17   errors.  After setting forth the applicable legal principles, the court will evaluate these claims in

18   turn below.

19                              **a.  Legal Standards**

20   The Sixth Amendment guarantees the effective assistance of counsel.  The United States

21   Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland*

22   *v. Washington*, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of counsel, a

23   petitioner must first show that, considering all the circumstances, counsel's performance fell

24   below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at  687-88.  After a

25   petitioner identifies the acts or omissions that are alleged not to have been the result of

26   reasonable professional judgment, the court must determine whether, in light of all the

18

1   circumstances, the identified acts or omissions were outside the wide range of professionally

2   competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).  Second, a

3   petitioner must establish that he was prejudiced by counsel's deficient performance.  *Strickland*,

4   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

5   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at

6   694.  A reasonable probability is "a probability sufficient to undermine confidence in the

7   outcome."  *Id.  See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981

8   (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

9   deficient before examining the prejudice suffered by the defendant as a result of the alleged

10  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

11  sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955

12  (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

13         In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption

14  that counsel's performance falls within the 'wide range of professional assistance.'"  *Kimmelman*

15  *v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).  There is in

16  addition a strong presumption that counsel "exercised acceptable professional judgment in all

17  significant decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing

18  *Strickland*, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance

19  of sufficient investigation and preparation to make reasonably informed, reasonably sound

20  judgments."  *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

21                        b.  **Failure to Advise Petitioner to Testify**

22         Petitioner argues that his trial counsel rendered ineffective assistance because he failed to

23  advise petitioner that he could testify at his trial without risking impeachment with his prior

24  conviction for disturbing the peace.  Pet. at 26.  Petitioner suggests that he "could have testified

25  on direct examination without stating whether he had or did not have an interest in 'males,' and

26  then, if the prosecutor asked him if he had such an interest, he could have answered that he did

1    have an interest in adult males in the past, but he never had an interest in male children." *Id.* at

2    26-27.  Petitioner also suggests that he could have testified on direct examination that "I'm

3    happily married, but for a while in the past I was attracted to a man." *Id.* at 31.  He argues that

4    trial counsel's failure to advise him to testify in this manner constituted deficient performance

5    and resulted in prejudice.

6          As described above, petitioner submitted as an exhibit a letter from his trial counsel,

7    wherein counsel explains that he informed petitioner he was subject to impeachment with his

8    prior conviction if he took the stand and "denied homosexual proclivities."  Pet., Ex. E at

9    consecutive p. 8.  Trial counsel apparently did not make any suggestions as to how petitioner

10   could testify and still avoid impeachment with his prior conviction, perhaps because there could

11   be no guarantee that any particular strategy would work.  In that regard, one must not lose sight

12   of the overarching principle that a witness must testify truthfully.  Petitioner has filed his own

13   declaration, in which he states that his trial counsel did not advise him that he could "testify that

14   I had once had an interest in a man but no longer did, and that this interest did not and never did

15   extend to boys."  Pet., Ex. F.  Petitioner further provides the declaration of Michael P. Thorman,

16   a specialist in criminal law, who states that he would have advised petitioner to testify that he

17   "previously had a sexual interest in adult men but does not and never did have a sexual interest

18   in boys."  Pet., Ex. G at 2.  Mr. Thorman opines that "competent defense counsel always

19   recommends that the defendant testify in a case alleging child molestation if the defense is

20   seeking an acquittal."  *Id.*

21         The California Court of Appeal rejected this claim of ineffective assistance of counsel,

22   reasoning as follows:

23               Appellant also raises, in his habeas petition, the issue of ineffective
                 assistance of counsel based on his trial attorney's failure to advise
24               him that he could have avoided impeachment by testifying to being
                 sexually attracted to men in the past, but never to boys.  He
25               suggests that he could have testified to "something like, 'I'm
                 happily married, but for a while in the past I was attracted to a
26               man.'"  This statement, appellant claims, would have prevented his

1  impeachment with the prior conviction but still allowed him to
testify.  Appellant also submits the declaration of Michael P.
2  Thorman, a certified specialist in criminal law, with his petition for
writ of habeas corpus.  Mr. Thorman states that, under the
3  circumstances, he would have advised appellant to truthfully
testify that he had a prior sexual interest in adult men, but never in
4  boys.  He opines that "this is a distinction a jury would readily
understand, and that the 1991 [sic] conviction would therefore
5  have little likelihood of demonstrating Mr. Burbine was disposed
to commit the charged offenses."

6

7  In order to demonstrate ineffective assistance of counsel, a
defendant must show that counsel's performance was inadequate
8  when measured against the standard of a reasonably competent
attorney, and that counsel's performance prejudiced defendant's
9  case in such a manner that his representation "so undermined the
proper functioning of the adversarial process that the trial cannot
10  be relied on as having produced a just result."  (*Strickland v.
Washington* (1984) 466 U.S. 668, 686.)  "'In determining whether
11  counsel's performance was deficient, a court must in general
exercise deferential scrutiny [citation]'"  (*People v. Brodit* (1998)
12  61 Cal.App.4th 1312, 1335, citing *People v. Ledesma* (1987) 43
Cal.3d 171, 216.)  "'Although deference is not abdication, . . .
13  courts should not second-guess reasonable, if difficult, tactical
decisions in the harsh light of hindsight.'"  (*People v. Brodit,
14  suprs*, 61 Cal.App.4th 1312, 1335, citing *People v. Scott* (1997) 15
Cal.4th 1188, 1212.)

15  While Mr. Thorman believes that a jury would "readily
understand" an admission by appellant that he was sexually
16  attracted to men "in the past," it is fair to say that reasonable minds
could differ on this issue.  This is precisely the type of tactical
17  decision that should not be second-guessed by an appellate court.
The trial attorney, who was in a position to observe the jurors
18  during voir dire and to see their reactions to the evidence offered
by the prosecution, certainly could have reached the reasonable
19  conclusion that any type of testimony by Mr. Burdine about sexual
attraction to men would be harmful to his defense.  Moreover, we
20  note that the proposed testimony still may have left appellant open
to impeachment with his prior inconsistent statement in which he
21  told the detective that he was only sexually attracted to adult
women.  Finally, we note that appellant never states that the
22  suggested tailored testimony is accurate.  His carefully worded
declaration states only that he would have given the tailored
23  testimony if he had been so advised.  We find no ineffective
assistance of counsel in failing to recommend the suggested
24  testimony.

25  Opinion 1 at 7-8.

26  ////

21

1        The California Court of Appeal concluded that petitioner's trial counsel may have made a

2 tactical decision to keep petitioner off the witness stand after considering the prejudice that

3 would ensue if petitioner was impeached with his prior conviction.  The appellate court also

4 noted that petitioner could still be impeached with his prior conviction even if he testified as he

5 now describes.  As set forth above, petitioner's trial counsel has explained that he advised

6 petitioner he could be impeached with his prior conviction if he took the stand, and then left it up

7 to petitioner to decide whether to testify or not.  Counsel states that he did not "dissuade or

8 encourage" petitioner's decision in this regard.  Pet., Ex. E at consecutive p. 8.

9        Petitioner has failed to demonstrate either deficient performance or prejudice arising

10 from his trial counsel's actions.  Considering the uncertainty with regard to the nature of the

11 prosecutor's questions on cross examination, the nature of the testimony petitioner might have

12 given, and the possible prejudice to petitioner if his prior conviction was introduced to impeach

13 his testimony, counsel's decision to inform petitioner of the possible ramifications of testifying

14 and then to leave it up to him whether to testify was certainly not "outside the wide range of

15 professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Petitioner was required to

16 testify truthfully, and counsel cannot be faulted for failing to tell petitioner exactly what to say

17 on the stand with regard to his sexual preferences.

18        Petitioner has also failed to demonstrate prejudice.  For the reasons expressed by the

19 California Court of Appeal, petitioner's proposed testimony carried certain risks, was not wholly

20 credible, and would not necessarily have prevented the introduction of petitioner's prior

21 conviction in any event.  In short, under the circumstances presented here, petitioner cannot

22 show that, but for counsel's failure to suggest that petitioner testify as he describes in his

23 petition, the result of the proceedings would have been different.  Accordingly, petitioner is not

24 entitled to relief on this claim.

25 ////

26 ////

1                    c. **Failure to Object to the Testimony of D.H.'s Mother**

2          Petitioner claims that his trial counsel rendered ineffective assistance because of his

3   failure to make "a more specific objection" to the testimony of D.H.'s mother on the ground of

4   lack of foundation, and his complete failure to object to this testimony on Confrontation Clause

5   grounds.  Pet. at 52.  The California Court of Appeal denied this claim, reasoning as follows:

6                    Appellant also argues that his trial attorney was ineffective
                     because he failed to make a more specific objection to D.H.'s
7                    mother's testimony on lack of foundation grounds and he failed to
                     object on confrontation clause grounds.  Neither claim has merit.
8                    As discussed above, because appellant had the opportunity to
                     cross-examine D.H., there was no basis for an objection on
9                    confrontation clause grounds.  Appellant also suggests that a more
                     specific foundational objection would have resulted in a hearing
10                   and finding that D.H.'s statements to his mother were unreliable
                     and inadmissible.  To the contrary, we have determined that D.H.'s
11                   statements had sufficient indicia of reliability.  We find no
                     reasonable probability that D.H.'s statement would have been
12                   excluded had a more specific objection been made.

13  Opinion 1 at 10.

14         The state court's conclusion that petitioner's trial counsel did not render ineffective

15  assistance because of his failure to make better or more appropriate objections to the testimony

16  of D.H.'s mother is not an objectively unreasonable application of *Strickland*.  As explained

17  above, the state court's conclusion that the evidence was properly admitted under state law is

18  binding on this court.  The court has also concluded that the admission of the evidence did not

19  violate petitioner's rights to due process or to confrontation of the witnesses against him.

20  Accordingly, trial counsel's failure to object to the testimony on these grounds was not deficient

21  performance.  *See Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000) (citing *Boag v.*

22  *Raines*, 769 F.2d 1341, 1344 (9th Cir.1985)) (an attorney's failure to make a meritless objection

23  or motion does not constitute ineffective assistance of counsel); *Rupe v. Wood*, 93 F.3d 1434,

24  1445 (9th Cir.1996) ("the failure to take a futile action can never be deficient performance").

25  Accordingly, petitioner is not entitled to relief on this claim.

26  ////

                                              23

### d.  **Failure to Request Jury Instruction on Other Crimes Evidence**

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to request a clarifying instruction after the jury asked a question during deliberations.  Pet. at 63-66. He argues that, without such an instruction, the jury may have considered improper character evidence in reaching its verdict.  *Id.*; Traverse at 10-11.  The California Court of Appeal rejected this claim, reasoning as follows:

> Appellant finally argues his trial counsel was ineffective for failure to request clarifying instructions after the jury questioned the court whether "each charge stand[s] by itself or can a decision on [one] charge influence the decision on another charge[?]"  The court directed the jury to review CALJIC 17.02.  The jury then sent another question:  "Regarding 17.02 – we understand that each count must be decided separately – can factors used from one decision be used as a factor in another decision[?]"  The court responded:  "[Y]es, you could compare and consider all the evidence as it relates to any particular count."  Both attorneys agreed with that response.

> Appellant urges that this instruction was inconsistent with CALJIC 17.02.  CALJIC 17.02 as given provides:  "Each count charges a distinct crime.  You must decide each count separately.  The defendant may be found guilty or not guilty of any or all of the crimes charged.  Your finding as to each count must be stated in a separate verdict."  At the outset, we find no inconsistency between CALJIC 17.02 and the court's explanation.  The fact that each count must be decided separately does not prevent the jury from considering all the evidence in making each determination.  The same testimony certainly may demonstrate guilt of more than one crime.

> This case does not present the same situation as *In re Anthony T.* (1980) 112 Cal.App.3d 92, on which appellant relies.  There, the allegations that a minor had committed two robberies, about two months apart, of two different restaurants were found true.  The minor presented an alibi defense to the first charge, and denied the second charge.  He was employed at the second restaurant, and came back twice after the robbery – once at the manager's request. The court noted that the case was close and that the minor "evidences no conduct associated with guilt in either of these instances . . . . [H]owever, if he did commit the September 8 robbery that would be consistent with committing the July 14th robbery . . . ."  (*Id.* at p. 101.)  Therefore, the record showed that "the trial court used each robbery in deciding whether appellant was guilty of the other."  (*Id.* at p. 102.)

> Here, the jury was instructed that it must decide each count
> separately, and their second note indicates that they understood
> that instruction.  The court then clarified that the jury "should
> compare and consider all the evidence as it relates to any particular
> count."  The jury then found appellant guilty of some counts and
> not guilty of others.  We find no prejudicial error in the trial
> court's instructions, and therefore no ineffective assistance of
> counsel in failing to object to those instructions.

Opinion 1 at 17-18.

Petitioner claims that because of the trial court's response to the jury's questions,

> the danger was thus presented that the jury considered evidence
> that appellant was guilty of one count as evidence that he was
> disposed to commit another count – i.e., as character evidence.
> The judge's answer to the second question essentially informed the
> jury that if it concluded from, for example, the testimony of J.V.
> that petitioner molested him, then it could infer from that tendency
> that he was likely to have molested R.L., in spite of whatever
> reasons there might have been to doubt that.  Therefore, it was
> necessary to give the jury some additional instruction to guide it in
> comparing the evidence of one count with that of another, so that it
> would not consider guilt of one offense as guilt of another.  For
> instance, the judge could have given some variation of CALJIC
> No. 2.50, such as: "Evidence of other crimes for which the
> defendant is on trial, if believed, may not be considered by you to
> prove that defendant is a person of bad character or that he has a
> disposition to commit crimes."

Pet. at 63-64.  Petitioner argues that the jury may have considered "*all* factors and *all* evidence

from one count in deciding another count," including "impermissible character evidence."

Traverse at 10.

The decision of the state appellate court rejecting this claim of ineffective assistance of

trial counsel is not contrary to or an unreasonable application of *Strickland* and should not be set

aside.  There is no evidence that the jury considered improper character evidence in reaching its

verdicts or that the trial court's response to the jury's questions would have allowed or

authorized such a procedure.  Nor is there any evidence that the jury remained confused about

the correct procedure to follow after receiving the trial court's responses.  The failure of

petitioner's trial counsel to request further clarifying instructions, under these circumstances,

1   was not outside the wide range of reasonable professional assistance and did not result in

2   prejudice.  *See United States v. Feldman*, 853 F.2d 648, 666 (9th Cir. 1988).  Accordingly,

3   petitioner is not entitled to relief on this claim.

4              **e.  Failure to Present Letters of Mitigation at Second Sentencing**
                   **Proceedings**

5

6          Petitioner claims that his trial counsel rendered ineffective assistance when he failed to

7   present letters of mitigation during the sentencing proceedings on remand.  Pet. at 100.  As

8   described above, counsel attempted to submit the letters during the original sentencing

9   proceedings but the trial judge declined to consider them because they were untimely filed.  At

10  the resentencing proceedings, counsel apparently did not attempt to submit the letters in

11  mitigation.

12         The California Court of Appeal rejected this claim in its decision on both of petitioner's

13  appeals.  In its second decision, the court explained its reasoning as follows:

14              As a separate basis for reversal of his sentence, appellant contends
                that the trial court erred in failing to consider, on resentencing, the
15              letters in mitigation that he submitted belatedly in connection with
                his original sentencing.  Alternatively, he contends that if this
16              argument was waived by his counsel's failure to call the letters to
                the trial court's attention, his counsel's assistance was ineffective.

17
                As already noted, at the outset of the resentencing hearing, the trial
18              judge listed the materials he had reviewed, which did not include
                appellant's letters in mitigation.  He then asked whether there was
19              anything else he should consider, and appellant's counsel
                responded "No."  It is hard to imagine any clearer record for a
20              waiver.

21              But there is insufficient evidence that the conduct of counsel in not
                offering the letters was conduct which fell below the standard of
22              care.  In our prior opinion, we held that appellant's original trial
                counsel's failure to submit the letters sufficiently in advance of
23              sentencing was not prejudicial, because "a review of the letters . . .
                leads us to conclude that there is no reasonable probability that
24              consideration of the letters would have [led] to a lesser sentence."
                We reached that conclusion because the letters were all premised
25              on expressions of appellant's innocence, and "[o]pinions as to the
                innocence of a defendant after a jury has already reached a guilty
26              verdict are not a factor in mitigation."  (*Cf. People v. Charron*

                                        26

(1987) 193 Cal.App.3d 981, 994, 238 Cal.Rptr. 660 [trial court did not err in rejecting letters testifying to defendant's good character as mitigating factor, when qualities spoken of in letters were contradicted by defendant's conduct in committing crimes of which he was convicted].)

*People v. Bruce G.* (2002) 97 Cal.App.4th 1233, 1248, 118 Cal.Rptr.2d 890, cited by appellant, is not to the contrary.  In that case, the court held that the trial court had erred in concluding it had no discretion to grant probation to a man convicted of molesting his minor daughters. The court then determined that this error made it necessary to remand for resentencing, because granting probation would not necessarily constitute an abuse of discretion given the defendant's remorse, amenability to treatment, good work history, and lack of any criminal record.  The court also mentioned that the defendant had submitted "numerous letters of support from family and friends" (*ibid.*), but unlike in this case, there is no indication that those letters were premised on the defendant's innocence.  Except for good work history, the other mitigating factors present in *Bruce G.* are not present in this case.

Thus, defense counsel's failure to object or argue the text of the letters in mitigation is understandable because the letters themselves were not properly mitigating, and we had said as much in our earlier opinion in *Burbine I*.  Moreover, appellant has failed to point to any facts upon resentencing that would alter our earlier conclusion that "there is no reasonable probability that the court would have imposed a lesser sentence" if the judge had reviewed the letters.  It follows that trial counsel's failure to call them to the judge's attention prior to the resentencing did not result in any prejudice to appellant.[10]  (*See People v. Staten* (2000) 24 Cal.4th 434, 451, 101 Cal.Rptr.2d 213, 11 P.3d 968 [alleged ineffective assistance of counsel not grounds for reversal unless appellant shows reasonable probability that result would have been different but for counsel's errors].)  Therefore, even if this waiver constituted ineffective assistance, this is not a ground for reversal, because appellant was not prejudiced.  Accordingly, we find no basis to reverse appellant's sentence on this ground.[11]

[10]  For the same reason, we see no reason to fault the trial judge for failing to review them of his own accord.  Our opinion in *Burbine I* clearly implied that this was unnecessary, because we held that the letters had no mitigating value.

[11]  In its decision on petitioner's first appeal, the state appellate court also rejected this claim of ineffective assistance of counsel, reasoning as follows:

Appellant also argues in his habeas petition that the failure to present the letters earlier constituted ineffective assistance of counsel.  When "'the record contains no explanation for the challenged behavior, an appellate court will reject the

1    Opinion 2 at 15-17.

2         Petitioner's claim that his trial counsel rendered ineffective assistance at the resentencing

3    hearing must be rejected.  The Ninth Circuit Court of Appeals has concluded that "there is no

4    clearly established federal law" regarding the standard for ineffective assistance of counsel at

5    sentencing in noncapital cases.  *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir.

6    2005).  When the Supreme Court established the test for ineffective assistance of counsel claims

7    in *Strickland*, the Court expressly declined to "consider the role of counsel in an ordinary

8    sentencing, which . . . may require a different approach to the definition of constitutionally

9    effective assistance."  *Id.*  In the years since *Strickland* was decided, the Supreme Court has not

10   announced what standard should apply to ineffective assistance of counsel claims in the context

11   of sentencing proceedings in noncapital cases.  *Id.*  Because there is no clearly established

12   United States Supreme Court case which "squarely addresses" this issue, the state court did not

13   unreasonably apply federal law in concluding that petitioner was not entitled to relief with

14   respect to this claim.  *See Moses v. Payne*, 543 F.3d 1090, 1098 (9th Cir. 2008).  Moreover, the

15   state court's conclusion that trial counsel's actions with regard to the letters in mitigation did not

16

17            claim of ineffective assistance "unless counsel was asked for an explanation and
             failed to provide one, or unless there simply could be no satisfactory
18           explanation."'" (*People v. Earp* (1999) 20 Cal.4th 826, 871, citing *People v.
             *Kipp* (1998) 18 Cal.4th 349, 367.)  Moreover, appellant must show "'"a
19           reasonable probability that, but for counsel's unprofessional errors, the result of
             the proceeding would have been different."'" (*People v. Staten* (2000) 24 Cal.4th
20           434, 451, citing *People v. Ledesma, supra,* 43 Cal.3d 171, 217-218.)  Here,
             nothing in the record indicates when appellant's trial counsel received the letters.
21           One possible explanation is that he did not receive the letters until after the rule
             437 deadline.  Moreover, a review of the letters, attached as exhibit D to
22           appellant's petition, leads us to conclude that there is no reasonable probability
             that consideration of the letters would have lead to a lesser sentence.  The letters
23           uniformly express the writers' viewpoints that appellant was not guilty.  Opinions
             as to the innocence of a defendant after a jury has already reached a guilty verdict
24           are not a factor in mitigation.  (See Cal. Rules of Court, rule 423.)  Therefore, we
             conclude that even if appellant's trial counsel was ineffective in not presenting the
25           letters in a timely fashion, there is no reasonable probability that the court would
             have imposed a lesser sentence.

26   Opinion 1 at 15.

                                                    28

1   result in prejudice to petitioner is not an unreasonable application of *Strickland*.  Therefore,

2   petitioner is not entitled to relief on this claim of ineffective assistance of trial counsel.

3                       **3.  Cumulative Error**

4          Petitioner claims that he was denied due process as a result of the cumulative impact of

5   the errors of his trial counsel.  The California Court of Appeal rejected this claim with the

6   following reasoning:

7              Appellant finally urges that he was prejudiced by the cumulative
               impact of his trial counsel's "numerous" deficiencies.  Under the
8              "'cumulative errors doctrine'" we must "assess the cumulative
               effect of any errors to see if it is reasonably probable the jury
9              would have reached a result more favorable to defendant in their
               absence.  [Citations.]"  (*People v. Kronemyer* (1987) 189
10             Cal.App.3d 314, 349.)  We find no cumulative effect here because
               we have already determined that there were no cumulative errors.

11

12  Opinion 1 at 18.

13         The Ninth Circuit has concluded that under clearly established United States Supreme

14  Court precedent, the combined effect of multiple trial errors may give rise to a due process

15  violation if it renders a trial fundamentally unfair, even where each error considered individually

16  would not require reversal.  *Parle v. Runnels*, 505 F.3d 922, 927 (9th. Cir. 2007) (citing

17  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S.

18  284, 290 (1973)).  "The fundamental question in determining whether the combined effect of

19  trial errors violated a defendant's due process rights is whether the errors rendered the criminal

20  defense 'far less persuasive,' *Chambers*, 410 U.S. at 294, and thereby had a 'substantial and

21  injurious effect or influence' on the jury's verdict."  *Parle*, 505 F.3d at 927 (quoting *Brecht*, 507

22  U.S. at 637).

23         This court has addressed each of petitioner's claims of ineffective assistance of trial

24  counsel and has concluded that no error of constitutional magnitude occurred at his trial in state

25  court.  This court also concludes that the alleged errors, even when considered together, did not

26  render petitioner's defense "far less persuasive," nor did they have a "substantial and injurious

                                              29

1  effect or influence on the jury's verdict."  Accordingly, petitioner is not entitled to relief on his

2  claim of cumulative error.

### 4. Right to Notice of the Charges Against Him

4  Petitioner's next claim is that his due process right to fair notice of the charges against

5  him and a reasonable opportunity to defend against those charges was violated because: (1) the

6  date of his alleged molestation of D.H. was not set forth with more specificity in the information;

7  and (2) there was insufficient evidence introduced at trial that he committed a lewd act upon

8  D.H. between August 1, 1997, and August 31, 1997, as alleged in the information.  Pet. at 57.

9  Petitioner argues that because he was not given notice of the exact date and time of the unlawful

10  acts, he "was denied a reasonable opportunity to prepare and present his defense and was taken

11  by surprise."  Traverse at 8.  Petitioner, a long-distance truck driver, states that if the indictment

12  or the trial testimony had been more specific, he may have been able to come up with an alibi or

13  "might have been able to allege he was away from home during the correct time periods."  *Id.*  In

14  essence, the issue presented here is whether petitioner was denied adequate notice of the charges

15  against him to enable him to present a defense, where the date of the lewd acts committed on

16  D.H. was never specifically alleged, either in the information or at trial.

17  The California Court of Appeal rejected petitioner's claim in this regard, reasoning as

18  follows:

> Appellant argues that there was insufficient evidence to support his
> conviction for committing a lewd act on D.H. "[o]n or about and
> between August 01, 1997, and August 31, 1997," as alleged in the
> information.  He maintains that the only evidence as to time frame
> was D.H.'s mother's testimony that D.H. made the statements to
> her on August 17, 1997, and suggests that his due process rights
> were violated because he had "no notice of the time when the act
> was alleged to have occurred" and was thereby misled in his
> defense.
>
> "Where alibi is not a defense, the prosecution need only prove the
> act was committed before the filing of the information and within
> the period of the statute of limitations.  [Citation.]  This is so
> because the precise time of a crime need not be declared in the
> accusatory pleading except where time is a material ingredient of

the offense. [Citations.]" (*People v. Obremski* (1989) 207 Cal.App.3d 1346, 1354.) "A variance is immaterial unless time is of the essence of the offense . . . . The test of the materiality of a variance is whether the indictment or information so fully and correctly informs the defendant of the criminal act with which he is charged that, taking into consideration the proof which is introduced against him, he is not misled in making his defense, or placed in danger of being twice put in jeopardy for the same offense." (*People v. Amy* (1950) 100 Cal.App.2d 126, 127.) Contrary to appellant's claim, *People v. Jones* (1990) 51 Cal.3d 294 did not change the rule of *Amy*, agreeing that "the defendant has no right to notice of the specific time or place of an offense, so long as it occurred within the applicable limitation period." (*Id.* at p. 317.) "'If the jury believed that the offenses did happen on or about the dates charged and within the limitation period, and defendant was sufficiently apprised of the approximate dates of the offenses and was not misled in making his defense or placed in danger of being twice in jeopardy, no prejudicial error appears.'" (*People v. Jones* (1984) 155 Cal.App.3d 153, 181, citing *People v. Brooks* (1955) 133 Cal.App.2d 210, 212.)

While it is true that there was no evidence pinpointing the particular day on which appellant pulled down D.H.'s pants, the testimony indicated that it took place during the summer of 1997, sometime on or before August 17. D.H. spent the weekdays with his grandparents on Plumb Street during the summer of 1997. The incident occurred sometime before August 17, 1997, when D.H. told his mother about it. Moreover, the allegation that the lewd act on D.H. took place "on or about" August 1997 could not have misled appellant. Appellant's defense was credibility of the witnesses. There was also the suggestion, through the testimony of Ms. Hansen about the wet pants incident, that D.H. may have misunderstood an innocent action on the part of appellant. Neither of these defenses was affected in any way by the failure to allege a specific date or any variance between the time period alleged and the time the jury found the offense occurred. We find that there was substantial evidence supporting the conviction of a lewd act committed against D.H. "on or about" August 1997.[12]

Opinion 1 at 11-12.

Petitioner's claim implicates several provisions of the federal constitution: the right to notice, the right to present a defense, and the requirement that sufficient evidence support a conviction. Petitioner's claim arises from the failure of the information to specify the exact date

_____

[12] We also note that appellant waived his right to a preliminary examination, which could have provided more specific evidence of the date of the charged offense.

31

1   and time of the alleged molestation, and the lack of specific testimony on that point at trial.

2   Numerous courts have acknowledged that often in cases involving sexual abuse of young

3   children, the precise times and dates of the alleged offense or offenses cannot be determined with

4   specificity.  *See*, *e.g.*, *Valentine v. Konteh*, 395 F.3d 626, 632, 638 (6th Cir. 2005) and cases cited

5   therein ("courts must be aware and responsive to the unique problems of child abuse cases").

6   Nonetheless, the Sixth Amendment guarantees a criminal defendant the fundamental right to be

7   clearly informed of the nature and cause of the charges against him in order to permit adequate

8   preparation of a defense.  *Cole v. State of Ark.*, 333 U.S. 196, 201 (1948).  Indeed, "[n]o

9   principle of procedural due process is more clearly established than that notice of the specific

10  charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are

11  among the constitutional rights of every accused in a criminal proceeding in all courts, state or

12  federal."  *Id.  See also Strickland*, 466 U.S. at 685 ("a fair trial is one in which evidence subject

13  to adversarial testing is presented to an impartial tribunal for resolution of issues defined in

14  advance of the proceeding"); *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A] conviction

15  upon a charge not made . . . constitutes a denial of due process").  The notice provision of the

16  Sixth Amendment is incorporated within the Due Process Clause of the Fourteenth Amendment

17  and is applicable to the states.  *Gautt v. Lewis*, 489 F.3d 993, 1003 (9th Cir. 2007).

18          When determining whether a criminal defendant has received fair notice of the charges

19  against him, a reviewing court must begin its analysis by reviewing the content of the

20  information or indictment.  *Id.*[13]  An indictment is constitutionally adequate if it: (1) contains the

21  elements of the charged offense; (2) gives the defendant adequate notice of the charges; and (3)

22

23          [13]  "The 'sufficiency of an indictment or information is primarily a question of state
     law.'" *Tapia v. Tansy*, 926 F.2d 1554, 1560 (10th Cir. 1991) (quoting *Franklin v. White*, 803
24   F.2d 416, 418 (8th Cir. 1986)).  However, the notice provided by a state in a charging instrument
     must comport with the due process guarantee of a fair trial.  *See Jackson*, 443 U.S. at 314 (it is
25   "axiomatic" that "a person cannot incur the loss of liberty for an offense without notice and a
     meaningful opportunity to defend"); *Wilkerson v. Wyrick*, 806 F.2d 161, 164 (8th Cir. 1986)
26   (applying this principle to habeas review of charging instrument).

protects the defendant against double jeopardy. *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Valentine*, 395 F.3d at 631. "It is generally sufficient that the indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). However, where guilt depends crucially upon a specific identification of fact, an indictment must do more than simply repeat the language of the criminal statute; it must also apprise the defendant of the relevant facts. *See United States v. Cruikshank*, 92 U.S. 542, 558 (1985). The United States Supreme Court has explained that

> The object of the indictment is to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances.

*Id*. The Ninth Circuit Court of Appeals has held that, in certain circumstances, a reviewing court can examine sources other than the information or indictment for evidence that the defendant received adequate notice, such as "a complaint, an arrest warrant, or a bill of particulars," or "during the course of a preliminary hearing." *Sheppard v. Rees*, 909 F.2d 1234, 1236 n.2 (9th Cir. 1990). Adequate notice may also be provided by trial testimony or by jury instructions. *Id*. at 1235. *See also Stephens v. Borg*, 59 F.3d 932, 934-36 (9th Cir. 1995); *Morrison v. Estelle*, 981 F.2d 425, 427-29 (9th Cir. 1992).

////

////

////

33

1    The charging document against petitioner alleged that "on or about and between August

2    01, 1997, and August 31, 1997," petitioner committed a lewd act upon D.H.  Clerk's Transcript

3    on Appeal (CT) at 12.  The prosecution's trial brief stated that:

4    > In August of 1997, 4 year old D.H. told his mother that the
     > defendant tickled his penis on more than one occasion.  D.H. lived
5    > across the street from the defendant.  D.H. would visit the
     > defendant while he worked on his truck and inside the defendant's
6    > house.  D.H. stated that the defendant pulled his pants down and
     > tickled his penis.  D.H. also stated he touched the defendant's
7    > penis.

8    *Id.* at 23-24.[14]  These sources notified petitioner of the approximate date of the alleged incidents,

9    the victim, and the nature of the incidents with sufficient clarity to enable him to prepare a

10   defense.  As noted by the California Court of Appeal, petitioner's defense did not depend on the

11   acts of molestation taking place on any particular date.  Rather, petitioner's defense was that

12   regardless of the time, date, and manner of the allegations, he never engaged in sexual conduct

13   with the victims.  To the extent petitioner may have had an alibi defense during any part of the

14   time period alleged in the information, such as a trip out of town, he could have presented it.

15   The fact that an alibi defense is difficult to assert, or cannot be asserted, does not render the

16   charge constitutionally deficient.  *See Fawcett v. Bablitch*, 962 F.2d 617, 619 (7th Cir. 1992)

17   (acknowledging that "it is hard to provide an alibi for a six-month period, or even for all the

18   weekends during that time" but concluding that, nevertheless, defendant was not precluded from

19   preparing a defense to charges of child abuse).  If this were not the case, most crimes of child

20   sexual assault could not be prosecuted.  *See Valentine*, 395 F.3d at 632 ("[c]ertainly, prosecutors

21   should be as specific as possible in delineating the dates and times of abuse offenses, but we

22   must acknowledge the reality of situations where young child victims are involved").

23   ////

24

25   [14]  As noted by the California Court of Appeal, petitioner waived his right to a
     preliminary hearing, which could have provided more particulars as to the dates and times of the
26   alleged acts.

The United States Supreme Court has not determined that an information in a child sexual abuse case is constitutionally deficient for failure to provide specific dates of incidents. Several federal circuit courts, however, have so held. *See Valentine*, 395 F.3d at 632 (citing Seventh and Tenth Circuit cases) ("[t]his Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements."). A failure to specify the precise dates upon which the alleged crimes occurred does not deprive a defendant of his constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily. *See, e.g.*, *United States v. McCown*, 711 F.2d 1441, 1450-51 (9th Cir. 1983); *United States v. Roman*, 728 F.2d 846, 851 (7th Cir. 1984); *United States v. Hultgren*, 713 F.2d 79, 89 (5th Cir. 1983); *United States v. Morris*, 700 F.2d 427, 429-30 (1st Cir. 1983). Further, it is not necessary to prove that the offense was committed on the day alleged in the charging document unless a particular day is an element of the offense, the date of the offense is material to whether it occurred outside of the statute of limitations, or the defendant is prejudiced. *Ledbetter v. United States*, 170 U.S. 606, 612 (1898); *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976); *United States v. Nunez*, 668 F.2d 1116, 1127 (10th Cir. 1981).

This is not a case where an element of the crime was omitted (*Russell*), where a pattern of government conduct affirmatively misled the defendant and ambushed him by relying on a different theory of liability at the last minute (*Sheppard*), where an appellate court affirmed a conviction on a different theory than the one presented to the jury (*United States v. McCormick*, 500 U.S. 257 (1991)), or where petitioner was convicted of a different crime than the one charged in the indictment (*United States v. Tsihnahijinnie*, 112 F.3d 988, 992 (9th Cir. 1997)). There is no evidence that the prosecutor here affirmatively misled petitioner. Further, petitioner did not put forth any evidence to support an alibi defense for any part of the periods alleged and he had sufficient notice of the specific conduct of which he was accused by virtue of the original charging documents and the testimony at trial. There is simply no evidence that petitioner was

1    unable to mount a defense because of the lack of a more specific date in the information.

2    Petitioner's vague claim that "there is simply no way of telling what might have been had the

3    proper time period been alleged," Traverse at 9, is insufficient to support his due process claim.

4           Because the exact times of the offenses are not material in this case, because they were

5    not an element of the offense, and because petitioner did not attempt to prove an alibi, the

6    imprecise charges did not mislead him or violate his right to due process.  For these reasons, this

7    court concludes that petitioner had adequate notice of the charges against him.  The state court

8    opinion rejecting petitioner's claim in this regard is a reasonable construction of the evidence in

9    this case and is not contrary to or an objectively unreasonable application of United States

10   Supreme Court authority.  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).  *See also* 28 U.S.C.

11   § 2254(d)(1).  Accordingly, petitioner is not entitled to habeas relief.[15]

12                      **5.  Sentencing Errors**

13          Petitioner raises numerous claims related to the sentence imposed on him after the

14   California Court of Appeal remanded for further sentencing proceedings.  Specifically, he claims

15   that: (1) his right to due process was violated at the resentencing proceedings because the trial

16   court lacked jurisdiction to increase his sentence on the principal count; (2) principles of

17   _____

18          [15]  Petitioner does not appear to be making a standard claim that the evidence was
     insufficient to support his conviction on the charge involving D.H., but only that there was no
19   specific evidence that the events took place during the exact time period specified in the
     information, thereby denying him the right to adequate notice of the charges against him.  *See*
20   Pet. at 57.  Even if he is making a claim of insufficient evidence, it lacks merit.  D.H. testified
     but was unable or unwilling to remember any acts of molestation.  However, his mother testified
21   that D.H. told her petitioner committed acts of molestation against him on or prior to August 17,
     1997.  There was also evidence that D.H. stayed at his grandparents' house, who were neighbors
22   of petitioner, during the summer months.  This court recognizes that the evidence of molestation
     against D.H. is not strong and that it consists solely of hearsay testimony.  However, considered
23   in the light most favorable to the prosecution, a rational jury could find beyond a reasonable
     doubt that the petitioner molested D.H. on or about the time alleged in the information.  *See*
24   *Jackson*, 443 U.S. at 319 (there is sufficient evidence to support a conviction if, "after viewing
     the evidence in the light most favorable to the prosecution, any rational trier of fact could have
25   found the essential elements of the crime beyond a reasonable doubt").  Accordingly, petitioner
     is not entitled to habeas relief on a claim that the evidence was insufficient to support his
26   conviction on the charge involving D.H.

                                              36

"fundamental fairness" and res judicata prevented the trial court from increasing the principal

term after he was "acquitted" of the upper term; (3) the trial court abused its discretion and

violated his right to due process when it imposed the upper term after making an implicit

determination that "aggravating factors did not predominate;" (4) his right to due process was

violated when the trial court increased the principal term on resentencing because his "overall

culpability on remand was actually less than before;" (5) the trial court violated his right to due

process by failing to admit letters in mitigation at the resentencing hearing; and (6) improper

factors used in aggravation of his sentence after remand violated his "right to fundamental

fairness in sentencing." Pet. at 7-8. The California Court of Appeal rejected all of these claims

in a published opinion, reasoning as follows:

### A. Imposition of Same Aggregate Term on Remand

The crux of appellant's challenge to the sentence imposed on remand is that he received no reduction in his aggregate prison term, despite our reversal of one of the three counts on which he was originally convicted. He maintains it is unjust that, even though he now stands convicted of having molested only two children, rather than the original three, he still faces the same amount of time in prison as when he was originally convicted.

Appellant contends that, given the trial judge's original decision to impose the middle term for the principal term, the judge could not, or should not, have modified the sentence on remand to impose the upper term for that count, so as to arrive at the same aggregate prison term. Appellant advances several alternative legal arguments in support of his position.

We have found no published California opinion addressing whether a defendant can receive the same aggregate prison term upon resentencing for a multi-victim felony conviction where the only count relating to one of the victims was reversed on appeal.[16] As discussed below, however, we conclude that, under principles

---

[16] The closest case appears to be *People v. Calderon* (1993) 20 Cal.App.4th 82, 26 Cal.Rptr.2d 31, which upheld the reimposition of the same term on resentencing following a partial reversal and remand. In *Calderon*, however, the count that had been reversed on appeal was a lesser included offense of an affirmed greater offense, not a separate one involving a different victim. (*See id.* at pp. 84-85, 26 Cal.Rptr.2d 31.) Nonetheless, we not only agree with the result in *Calderon*, but also, for the reasons expressed below, reach the same result in the case before us.

already elucidated in the case law, the trial judge's original sentencing choices did not constrain him or her from imposing any sentence permitted under the applicable statutes and rules on remand, subject only to the limitation that the aggregate prison term could not be increased.  (*See People v. Craig, supra*, 66 Cal.App.4th at pp. 1447-1448, 78 Cal.Rptr.2d 659.)

**1. Lack of Jurisdiction to Modify Sentence**

First, citing *People v. Karaman* (1992) 4 Cal.4th 335, 14 Cal.Rptr.2d 801, 842 P.2d 100, appellant contends that the trial court lacked jurisdiction to resentence him to the upper term for the continuous sexual abuse count, after having sentenced him to the middle term for that offense prior to the appeal and remand. He argues that "the court cannot modify a sentence, either by increasing it or decreasing it, once the defendant has begun to serve it."  In particular, he argues that even where the judgment is reversed as to one count, the trial court on remand does not regain jurisdiction to modify the sentence imposed for counts that were affirmed on appeal.   Essentially, appellant's contention is that under *People v. Karaman*, the only alternative left to the trial court upon remand here was to strike that portion of appellant's sentence originally imposed for the count that we reversed in *Burbine I.*

*People v. Karaman*, however, presented the question whether a trial judge retains jurisdiction to modify a defendant's sentence during a brief time period that intervenes, due to a stay of execution, between the entry of the sentence in the minutes and the actual commencement of the defendant's prison term.  *Karaman* held that sentencing jurisdiction is retained by the trial court during that period, because the "execution" of the sentence does not occur until the defendant is remanded into custody to begin serving his term.  (*Karaman, supra*, at pp. 344-345, 14 Cal.Rptr.2d 801, 842 P.2d 100.)

Therefore, the issue considered and decided by the court in *Karaman* is not relevant to this case, and its holding does not support appellant's argument that the trial court lacked jurisdiction to modify his sentence.  It is true that the trial court lost jurisdiction to modify appellant's original sentence when appellant began serving it, but that too is irrelevant, because the trial court regained jurisdiction over appellant's sentence when we remanded the matter for resentencing.   (*See, e.g., People v. Hill* (1986) 185 Cal.App.3d 831, 834, 230 Cal.Rptr. 109; *People v. Savala* (1983) 147 Cal.App.3d 63, 70, 195 Cal.Rptr. 193, disapproved on other grounds in *People v. Foley* (1985) 170 Cal.App.3d 1039, 1046, 216 Cal.Rptr. 865.)

Appellant relies on *Karaman* for the proposition that a remand for resentencing vests the trial court with jurisdiction only over that portion of the original sentence pertaining to the count that was

reversed, and not over his sentence for the affirmed counts.  This assumes that a felony sentence for a multiple-count conviction consists of multiple independent components, rather than being an integrated whole – a view that has been repeatedly rejected by other courts that have considered the issue.  In *People v. Begnaud* (1991) 235 Cal.App.3d 1548, 1 Cal.Rptr.2d 507, for example, the court addressed a jurisdictional argument similar to the one appellant makes in this case, and rejected it.  The court reasoned that the "interlocking nature" of felony sentencing under section 1170.1, subdivision (a), which fixes consecutive subordinate terms at one-third the middle term, "compels [the] conclusion" that the statute "creates an exception to the general rule that jurisdiction ceases when execution of the sentence begins."  (*Id.* at p. 1554, 1 Cal.Rptr.2d 507, citing *People v. Bustamante* (1981) 30 Cal.3d 88, 104, fn. 12, 177 Cal.Rptr. 576, 634 P.2d 927; *People v. Bozeman* (1984) 152 Cal.App.3d 504, 507, 199 Cal.Rptr. 343.)[17]

Other cases have reached much the same conclusion regarding the inherently integrated nature of a felony sentence under the current statutory scheme.  For example, in *People v. Hill, supra,* the court opined that "When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme.  Not limited to merely striking illegal portions, the trial court may reconsider all sentencing choices.  [Citations.] This rule is justified because an aggregate prison term is not a series of separate independent terms, but one term made up of interdependent components."  (*People v. Hill, supra,* 185 Cal.App.3d at p. 834, 230 Cal.Rptr. 109, citing, *inter alia, People v. Savala, supra,* 147 Cal.App.3d at pp. 68-69, 195 Cal.Rptr. 193; *see also People v. Castaneda* (1999) 75 Cal.App.4th 611, 613-614, 89 Cal.Rptr.2d 367; *People v. Craig, supra,* 66 Cal.App.4th at pp. 1450-1452, 78 Cal.Rptr.2d 659; *People v. Calderon, supra,* 20 Cal.App.4th 82, 26 Cal.Rptr.2d 31; *People v. Rojas* (1988) 206 Cal.App.3d 795, 802, 253 Cal.Rptr. 786.)

Yet appellant contends that cases like *Calderon,* which involve multiple counts involving crimes against a single victim, are inapposite to this case where our reversal reduced not only the number of crimes, but also the number of victims from three to two.  Appellant argues these circumstances necessarily imply a lesser degree of culpability than that perceived at his original sentencing hearing, thereby requiring a reduction of his aggregate sentence.

---

[17]  In *Begnaud,* the count that was reversed on the initial appeal was the one responsible for the principal term of the defendant's sentence, rather than, as here, a count responsible for a subordinate term.  We do not view this distinction as crucial to the jurisdictional question.  In our view, the principle that a felony sentence under the Determinate Sentencing Law is an integrated whole applies regardless of which element of that whole is invalidated by an appellate reversal.

We disagree that the facts of this case constrained the trial court upon resentencing to make a mandatory reduction in the original aggregate sentence.  We reject appellant's claim primarily because we endorse the notion that trial courts are, and should be, afforded discretion by rule and statute to reconsider an entire sentencing structure in multi-count cases where a portion of the original verdict and resulting sentence has been vacated by a higher court.  Moreover, to suggest otherwise would potentially encourage trial courts to take into account the likelihood of certain counts surviving appeal  – a sentencing algorithm which might unnecessarily lead to longer original sentences.

As already noted, case law holds that, based on double jeopardy and due process, the aggregate prison term imposed for all of the surviving counts cannot be increased on remand after a partial reversal, a circumstance appellant does not contend occurred here.  (*See People v. Craig, supra*, 66 Cal.App.4th at pp. 1447-1448, 78 Cal.Rptr.2d 659.)  We do not view these cases as imposing a limit on the trial court's jurisdiction over resentencing, however.  Rather, they impose a limitation on how the court's sentencing discretion may be exercised.

In accord with this line of cases, we hold that upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term.

**2. Equitable Principles of Res Judicata**

Appellant next argues that, even if the court regained jurisdiction to resentence him on the affirmed counts, under the specific circumstances of this case, the trial court's modification of its prior sentencing choices violated equitable principles of res judicata that must be applied here in order to achieve fundamental fairness and comply with due process.  He cites *People v. Mitchell* (2000) 81 Cal.App.4th 132, 96 Cal.Rptr.2d 401 ( *Mitchell* ) for the proposition that res judicata applied to the trial court's earlier decision to impose the midterm for the continuous sexual abuse count, thereby precluding it from imposing the aggravated term for that count at resentencing.[18]

---

[18]   Respondent contends that this issue was waived by appellant's failure to raise it in the trial court.  Appellant counters that the issue is one of due process, and therefore can be raised for the first time on appeal, and that, if the issue was waived, his trial counsel was therefore ineffective.  We need not reach appellant's contentions, because our reading of the record indicates that appellant's trial counsel adequately preserved this question.  At the resentencing hearing, counsel argued that the court had already considered and rejected the aggravating factors in the prosecution's brief, and therefore its original finding that there were no aggravating

In *Mitchell*, the defendant was convicted of assault with a deadly weapon, for which he was originally sentenced to a nine-year state prison term, including a five-year enhancement based upon a true finding that the defendant had suffered a prior conviction for a serious felony. (§ 667, subds.(a), (d), & (e); *Mitchell, supra*, 81 Cal.App.4th at p. 136, 96 Cal.Rptr.2d 401.)  On appeal, the true finding was reversed based on ineffective assistance of counsel, the appellate court concluding the evidence was insufficient to sustain the prior serious felony allegation.   Upon remand, a new evidentiary hearing was held on the serious felony enhancement, and the trial court again found the prior serious felony allegation true. (*Id.* at p. 138, 96 Cal.Rptr.2d 401.)

Upon the second appeal, the court in  *Mitchell* acknowledged that principles of double jeopardy do not bar retrial of prior conviction allegations in a noncapital case. (*Mitchell, supra*, 81 Cal.App.4th at pp. 139-142, 96 Cal.Rptr.2d 401.)  It ruled, however, that a finding that the evidence does not support an allegation of prior serious felony is akin to an acquittal of that allegation, concluding that principles of res judicata and law of the case bar the prosecution from a second attempt to prove the truth of the allegation. (*Id.* at pp. 155-156, 96 Cal.Rptr.2d 401.)  It reasoned that "where the government has had a full and fair opportunity to present its case unhampered by evidentiary error or other impediment, fundamental fairness requires application of equitable principles of res judicata (direct estoppel) and law of the case to preclude the relitigation of [the defendant's] prior serious felony conviction allegations for purposes of both a five-year enhancement and a strike under the three strikes law. [Citations.]" (*Id.* at p. 136, 96 Cal.Rptr.2d 401.)

First, we find the  *Mitchell* holding inapplicable to the present case as the reasoning of the court has no application to a trial court's discretionary sentencing choices.[19]   In selecting the middle term as the principal term at the initial sentencing, the trial court here did not, as appellant suggests, "acquit" him of the upper term.  It did no more than find that the totality of the circumstances justified the selection of that particular term.  Appellant cites no California case holding that it is fundamentally unfair to revisit the term selection issue on remand, after the original circumstances have been altered by the reversal of one count of the original conviction (provided, of course, that the aggregate prison term is not increased).  We

circumstances should stand.  The substance of the current argument was thus presented to the trial court.

[19]  Indeed, as respondent points out, *Mitchell* itself appears to have contemplated the possibility that, subject to the appellate court's directions regarding striking its true findings on the defendant's priors, the trial court could recalculate the entire sentence as it saw fit. (*People v. Mitchell, supra,* 81 Cal.App.4th at p. 157 & fn. 10, 96 Cal.Rptr.2d 401.)

decline appellant's invitation to be the first California court to so hold.[20]

Furthermore, we note that the reasoning in *People v. Mitchell* was persuasively discredited in *People v. Scott* (2000) 85 Cal.App.4th 905, 102 Cal.Rptr.2d 622, where the court pointed out that (1) principles of res judicata do not apply until there has been a final determination on the merits, which does not occur simply because a finding was made in an ongoing proceeding; (2) in *People v. Morton* (1953) 41 Cal.2d 536, 261 P.2d 523, the California Supreme Court made it clear that retrial of the question of whether the defendant had suffered a prior conviction for a particular offense was entirely proper; and (3) the conclusion that sufficient evidence does not support an allegation of prior conviction of a serious felony is not at all analogous to an acquittal, because the jury does not consider whether the defendant did in fact commit a serious felony, but decides only the defendant's continuing status. The court, citing *People v. Monge* (1997) 16 Cal.4th 826, 839, 66 Cal.Rptr.2d 853, 941 P.2d 1121, pointed out that the prosecution is entitled to reallege and retry that status in as many cases as it is relevant.  (*People v. Scott, supra*, 85 Cal.App.4th at pp. 916-924, 102 Cal.Rptr.2d 622.)  In addition, the doctrine of law of the case does not prevent retrial of an issue, although it does require that the same conclusion be reached if that matter is retried on the same evidence.  (*Id.* at p. 924, 102 Cal.Rptr.2d 622.)  In what might be described as judicial piling-on, numerous published, as well as non-published, opinions have since joined the chorus of criticism of Mitchell.  (*Cherry v. Superior Court* (2001) 86 Cal.App.4th 1296, 1303-1305, 104 Cal.Rptr.2d 131; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1455-1456, 106 Cal.Rptr.2d 773; *People v. Sotello* (2002) 94 Cal.App.4th 1349, 1354-1357, 115 Cal.Rptr.2d 118.)[21]

////

---

[20]  We are not persuaded otherwise by the federal authorities cited by appellant.  None of them holds that res judicata or any other legal principle precludes a trial court, on remand for resentencing, from reconsidering its prior discretionary sentencing decisions.  Moreover, appellant does not explain how decisions under federal sentencing statutes and rules are relevant to sentencing under the California determinate sentencing law.

[21]  The issue whether res judicata or law of the case bars retrial of prior conviction allegations after a reversal on appeal for insufficient evidence is presently before the California Supreme Court.  (*People v. Barragan*, review granted May 15, 2002, S105734.)  Even if the Supreme Court determined in *Barragan* that retrial of prior conviction allegations is barred, however, that would not persuade us to accept appellant's argument in this case.  As already explained, we do not consider the reasoning in Mitchell applicable to a trial court's discretionary sentencing choices.

### 3. Abuse of Discretion and Use of Improper Aggravating Factors

In addition to his lack of jurisdiction and res judicata arguments, appellant contends that in imposing the upper term for the principal term at appellant's resentencing, the trial court relied on improper aggravating factors and abused its discretion.  In support of this argument, appellant relies in part on the fact that at the original sentencing hearing, when it imposed the middle term, the court expressly considered the same aggravating factors and rejected them as "contained within the charge" of continuous sexual abuse of a child.  (*See* rule 4.420(d) ["A fact that is an element of the crime shall not be used to impose the upper term."]; *cf. People v. Quinones* (1988) 202 Cal.App.3d 1154, 1159, 249 Cal.Rptr. 435 [improper to use youth of victim as aggravating factor in child molestation case, because victim's age is element of offense].)

Appellant argues that it was an abuse of discretion for the trial court to change its mind, on resentencing, regarding whether the prosecution's proffered factors in aggravation were contained within the charge.  We disagree.

It is established that a circumstance that is an element of the substantive offense cannot be used as a factor in aggravation.  (*People v. Wilks* (1978) 21 Cal.3d 460, 470, 146 Cal.Rptr. 364, 578 P.2d 1369; *People v. Clark* (1992) 12 Cal.App.4th 663, 666, 15 Cal.Rptr.2d 709.)  A sentencing factor is only an element of the offense, however, if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor.  (*People v. Clark, supra*, at p. 666, 15 Cal.Rptr.2d 709.)  In this case, we are persuaded that the aggravating factors cited by the trial court on resentencing were not in fact elements of the crimes of which appellant was convicted, and therefore were properly considered in aggravation.

Appellant cites *People v. Fernandez* (1990) 226 Cal.App.3d 669, 680, 276 Cal.Rptr. 631, for the proposition that it was improper to rely on the "planning and sophistication" factor (rule 4.421(a)(8)) because it "would . . . probably apply in every resident child molester case."  The court in *Fernandez* went on to say, however, that "further elaboration would be particularly helpful in understanding how and why the facts showing premeditation in this case made the offenses worse than they ordinarily would have been. [Citation.]"  (*Id.* at p. 680, 276 Cal.Rptr. 631.)

In the present case, the trial court provided such an elaboration.  In support of its finding on resentencing that appellant's crimes were "planned and sophisticated," the court stated that appellant provided his victims with movies and toys "to insure that he remained in [their] good graces" and "to keep them from telling

43

what [was] going on."[22]  Moreover, appellant, unlike the defendant in *Fernandez*, was a neighbor of his victims rather than a household member, and therefore not strictly speaking a "resident" child molester.  Under the circumstances, appellant's having lulled his victims into acquiescence and silence by cultivating a "friendly neighbor" relationship with them was distinct from the elements of the crime, and made appellant's offenses worse than they otherwise would have been by manipulating the children's natural feelings of gratitude and affection.  Thus, we do not find any error in the trial court's reliance on planning and sophistication as an aggravating factor.

The trial court also found that appellant "took advantage of a position of trust that he developed with these young children" (rule 4.421(a)(11)) by "taking them on rides on [his big rig] truck," which the evidence at trial showed was equipped with a sleeping area in which appellant molested one of his victims.  Appellant contends that occupying a position of trust with respect to the victim is an element of continuous child abuse, and thus that this factor was not properly aggravating.  Appellant's contention has been rejected by another division of this court, in an opinion with which we concur.  (*People v. Clark, supra*, 12 Cal.App.4th at p. 666, 15 Cal.Rptr.2d 709.)  Section 288.5 requires only that the perpetrator "either reside[ ] in the same home with ... or ha[ve] recurring access to the child."  *People v. Clark* held that because "continuous sexual abuse can be committed by anyone residing in the same home with the children, whether or not they have special status with the victim," abuse of trust can be used as an aggravating factor even against a member of a child's household.  (*People v. Clark, supra*, at p. 666, 15 Cal.Rptr.2d 709.)  The same clearly holds true for non-household members.  A neighbor, or a housecleaner, gardener, or dog walker employed by a child's parents, for example, might enjoy "recurring access" to a child without occupying a position of trust with respect to him or her.

In this case, appellant notes that the mother of the continuous abuse victim actively encouraged what she perceived as a quasi-paternal relationship between appellant and her child.  This fact bolsters rather than undercuts the trial court's finding in

---

[22]  Appellant contends that there was no evidence that he bought toys for the victims. This argument was not raised in the trial court, and is unsupported by any reference to the record.  On the other hand, respondent has not provided us with any citations to the record indicating that toy buying did occur, and our prior opinion does not mention it.  In any event, even if appellant did not literally buy toys for the victims, the record is clear that appellant took the victim of his continuous abuse to the movies and on trips, encouraged him to sleep over at his house and in his truck, and allowed him to camp out in his backyard.  He also gave candy to the other victim. Thus, the record does support the trial court's underlying point that appellant undertook deliberate efforts to insure that he remained in his victims' good graces and to deter them from reporting the abuse.

aggravation regarding appellant's position of trust.  Appellant's prolonged deception of the victim's mother concerning the true nature of his interest in the victim not only is not an element of the crime, but also did exactly what appellant contends an aggravating factor should do, i.e., it made this particular crime distinctively worse than others of its nature.

In short, the trial court did not err in considering the cited aspects of appellant's conduct as aggravating factors.  If the trial court was wrong in rejecting them the first time, as we believe it was, it cannot have been an abuse of discretion for the court to reconsider, and correct its own error, after it regained jurisdiction by virtue of our remand.

But even if the reconsideration was error, we would still find no reason to disturb the sentence that was imposed on remand. Only a single aggravating factor is required to impose the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640; *People v. Castellano* (1983) 140 Cal.App.3d 608, 614-615, 189 Cal.Rptr. 692.)  In this case, the court's decision to impose the upper term was supported by an aggravating factor that is beyond reproach and had not been present the first time, namely, the imposition of a concurrent term for the affirmed subordinate count, when the sentence for that count could have been imposed consecutively.  (Rule 4.421(a)(7).)  Thus, even if the court had erred in considering the other aggravating factors, the decision to impose the upper term would still be valid.

Appellant argues that the "concurrent term" factor did not really exist.  He notes that the case law already cited (e.g., *People v. Craig, supra*, 66 Cal.App.4th at pp. 1447-1448, 78 Cal.Rptr.2d 659) barred the trial court from sentencing appellant to a longer term on resentencing than the 16 years he originally received.  He argues that the court therefore could not have both imposed the upper term of 16 years, and made the subordinate term run consecutively.  This is true, but it is also beyond cavil that the 16-year limit would not have prevented the trial court, on remand, from imposing the 12-year middle term plus a 2-year consecutive subordinate term.  Having chosen, instead, to make the subordinate term run concurrently, the court was free to use that choice as an aggravating factor allowing imposition of the 16-year upper term for the base term.

Finally, appellant urges us to reverse on the authority of *People v. Swanson* (1983) 140 Cal.App.3d 571, 574, 189 Cal.Rptr. 547, which held that a sentencing judge is required to base a choice of term on the statutory and rule criteria, on an analysis of legitimate aggravating and mitigating factors, but not on a subjective feeling about whether the resulting sentence seems too long, too short or just right.  More recent cases, however, have reasoned otherwise, holding that a judge's subjective belief regarding the length of

45

sentence to be imposed is not improper so long as it is channeled by the guided discretion outlined in the myriad of statutory sentencing criteria. (*People v. Calderon, supra*, 20 Cal.App.4th at p. 88, 26 Cal.Rptr.2d 31; *People v. Stevens* (1988) 205 Cal.App.3d 1452, 1457, 253 Cal.Rptr. 173; *People v. Savala, supra*, 147 Cal.App.3d at p. 69, 195 Cal.Rptr. 193.)  The more recent cases are the more persuasive, but even if they were not, there is nothing in the record in this case to indicate that, on resentencing, the trial judge was reasoning backward from a subjectively selected sentence.  On the contrary, the transcript of the sentencing hearing affirmatively demonstrates that the trial judge "re-reviewed . . . the probation officer's report [and] the facts and circumstances of the case," and then exercised his sentencing discretion based on an analysis of legitimate factors.

Opinion 2 at 4-15.

Petitioner's claims regarding these sentencing issues were denied by the California Court of Appeal on state law grounds in a thorough, well analyzed opinion.  As discussed below, it is not the role of this court on federal habeas to review the state court's analysis of the state law issues.

Federal habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by either a state trial court or appellate court.  "State courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue.  *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of state concern."  *Makal v. Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976).  *See also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("[t]he decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (petitioner's claim regarding merger of convictions for sentencing was exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding).

States sentencing courts have wide latitude in their decisions with regard to punishment. *Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir. 1987). "Generally, a federal appellate court may not review a state sentence that is within the statutory limits." *Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987). The Ninth Circuit has specifically refused to consider on habeas review claims of erroneous application of state sentencing law by state courts. *See, e.g., Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly weapon qualifies as a "serious felony" under California's sentence enhancement provisions is a question of state sentencing law and does not state a constitutional claim). "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. at 67-68. *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (the question to be decided by a federal court on petition for habeas corpus is not whether the state committed state-law error but whether such the state court's action "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation"). *Cf. Fetterly v. Paskett*, 997 F.2d 1295, 1300 (9th Cir. 1993) ("the failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state"); *Walker*, 850 F.2d at 476 ("we may vacate a sentence, however, if it was imposed in violation of due process").

All of petitioner's claims regarding the imposition of his sentence on remand were denied by the California Court of Appeal on state law grounds in a thorough and reasoned opinion. The state court's decision that petitioner's sentence did not violate state law or the state constitution, derived from its analysis of state law, is binding on this court. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law . . . .").

Petitioner has also failed to demonstrate that his sentence violated federal law or that the state court's decision was contrary to or an unreasonable application of United States Supreme Court authority. The federal cases cited by petitioner in support of his claims of sentencing error are factually dissimilar to the instant case and do not justify habeas corpus relief. *See United*

47

*States v. Oppenheimer*, 242 U.S. 85 (1916) (cited on pgs. 72, 78, 86 of Pet.) (United States Supreme Court upheld a trial court's reliance on collateral estoppel to dismiss the second indictment of a defendant whose original indictment had been dismissed for violation of the statute of limitations); *Ashe v. Swenson*, 397 U.S. 436 (1970) (cited on pgs. 72, 78, 86 of Pet.) (where defendant was charged in separate counts with robbery of each of six poker players, where sole issue was whether he was one of the robbers, and was acquitted on a count against one of the players, federal rule of collateral estoppel, embodied in the Fifth Amendment guarantee against double jeopardy, precluded subsequent prosecution of defendant for robbery of a different player); *Poland v. Arizona*, 476 U.S. 147, 157 (1986) (cited on p. 85 of Pet.) (trial judge's rejection of the "pecuniary gain" aggravating circumstance in death penalty case was not an "acquittal" of that circumstance for double jeopardy purposes, and did not foreclose reconsideration of that circumstance by the reviewing court); *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984) (cited on p. 85 of Pet.) (respondent's initial sentence of life imprisonment constituted an "acquittal" of the death penalty, and barred a retrial on the appropriateness of the death penalty); *United States v. Mateo-Mendez*, 215 F.3d 1039, 1045 (9th Cir. 2000) (cited on p. 85 of Pet.) (in a case involving federal sentencing guidelines, remand for resentencing not appropriate where the trial court's factual findings on the timeliness and completeness of defendant's confession were unequivocal); *United States v. McElyea*, 158 F.3d 1016, 1021 (9th Cir. 1998) (cited on p. 85 of Pet.) (matter remanded for resentencing where district court improperly enhanced defendant's sentence for being an "Armed Career Criminal" pursuant to 18 U.S.C. § 924(e)(1)); *United States v. Becerra*, 992 F.2d 960, 967 (9th Cir. 1993) (cited on p. 85 of Pet.) (in case involving federal sentencing guidelines, matter remanded for resentencing where evidence was insufficient to support trial court's finding regarding the base offense level); *United States v. Hull*, 792 F.2d 941, 942 -943 (9th Cir. 1986) (cited on pgs. 90, 94, 95 of Pet.) (noting that "[a] defendant's due process rights are violated when a trial judge relies on materially false or unreliable information in sentencing" and "[a] sentence must be vacated if it

1   was based on information that lacks 'some minimal indicium of reliability beyond mere

2   allegation'"); *United States v. Capriola*, 537 F.2d 319 (9th Cir. 1976) (cited on pgs. 90, 94, 95 of

3   Pet.) (in view of disparity between sentences imposed upon defendants and upon others involved

4   in the conspiracy who pled guilty, remand was required to permit district court to either reduce

5   the sentences or to state the reason for the sentences actually imposed).

6          There is no evidence that petitioner's sentence on remand was violative of his rights to

7   due process or the Ex Post Facto Clause, or any other federal constitutional right.  *Cf. Farrow v.*

8   *United States*, 580 F.2d 1339, 1354 (9th Cir. 1978) (approving a procedure whereby federal

9   judge determines whether, treating challenged prior convictions as invalid, the original sentence

10  would still be the appropriate sentence).  Because petitioner's challenges to his sentence on

11  remand do not establish a federal constitutional violation, he is not entitled to habeas corpus

12  relief on these claims.  *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (petitioner's

13  sentencing claims insufficient to merit federal habeas relief).

14                        **6.  Evidentiary Hearing**

15         In a separately filed document, petitioner requests an evidentiary hearing on "certain

16  factual allegations of the habeas corpus petition."  December 30, 2004 Request for Evidentiary

17  Hearing on Allegations of Petition for Writ of Habeas Corpus (hereinafter "Request for

18  Evidentiary Hearing").  Specifically, petitioner requests that the court hear testimony at an

19  evidentiary hearing from himself; from E. Glynn Stanley, his trial counsel; and from Thomas

20  Hagler, his counsel at the resentencing proceedings.

21         Petitioner requests testimony from Mr. Stanley on the following subjects: (1) counsel's

22  failure to advise petitioner "that there was a way he could testify without exposing himself to

23  prejudicial impeachment concerning his prior conviction, i.e., that he could testify he once had

24  an interest in a man or men but no longer did, and that he does not and never did have an interest

25  in boys;" (2) counsel's failure to advise petitioner "that the issue of the prior conviction ruling

26  might not be preserved for appeal if he did not testify;" (3) counsel's failure to make a more

                                      49

1   specific objection to the lack of foundation for the testimony of D.H.'s mother and to object to

2   that testimony on Confrontation Clause grounds; and (4) counsel's failure to ask for a jury

3   instruction in response to the jurors' questions during deliberations.  Request for Evidentiary

4   Hearing at 2-4.  Petitioner requests testimony from Mr. Hagler regarding his failure to present

5   letters in mitigation from petitioner's friends and neighbors at the resentencing hearing.  *Id.* at 4-

6   5.  Petitioner states that he would testify regarding his trial counsel's failure to advise him that

7   there was a way he could testify without exposing himself to impeachment concerning his prior

8   conviction, and counsel's failure to advise petitioner that the issue of the prior conviction ruling

9   might not be preserved for appeal if he did not testify.  Petitioner states that "had he been so

10  advised, petitioner would have testified that the allegations of the complainants in the present

11  case are not true, the alleged incidents never happened, and he would never do such things with

12  children."  *Id.* at 3.  Petitioner argues that the above-described testimony would support his

13  claims of ineffective assistance of counsel.

14          Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

15  following circumstances:

16              (e)(2) If the applicant has failed to develop the factual basis of a
                claim in State court proceedings, the court shall not hold an
17              evidentiary hearing on the claim unless the applicant shows that-

18                  (A) the claim relies on-

19                      (I) a new rule of constitutional law, made retroactive to cases on
                        collateral review by the Supreme Court, that was previously
20                      unavailable; or

21                      (ii) a factual predicate that could not have been previously
                        discovered through the exercise of due diligence; and
22
                    (B) the facts underlying the claim would be sufficient to establish
23                  by clear and convincing evidence that but for constitutional error,
                    no reasonable fact finder would have found the applicant guilty of
24                  the underlying offense;

25  28 U.S.C. § 2254(e)(2).

26  ////

1    Under this statutory scheme, a district court presented with a request for an evidentiary

2    hearing must first determine whether a factual basis exists in the record to support a petitioner's

3    claims and, if not, whether an evidentiary hearing "might be appropriate." *Baja v. Ducharme*,

4    187 F.3d 1075, 1078 (9th Cir. 1999). *See also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir.

5    2005); *Insyxiengmay v. Morgan*, 403 F.3d 657, 669-70 (9th Cir. 2005). A federal court must

6    take into account the AEDPA standards in deciding whether an evidentiary hearing is

7    appropriate. *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007). A petitioner must also

8    "allege[] facts that, if proved, would entitle him to relief." *Schell v. Witek*, 218 F.3d 1017, 1028

9    (9th Cir. 2000).

10   If the facts do not exist or are inadequate and a hearing might be appropriate, the court

11   must determine whether the petitioner has "failed to develop the factual basis of a claim in State

12   court." 28 U.S.C. § 2254(d); *Insyxiengmay*, 403 F.3d at 669-70. A petitioner will only be

13   charged with a "failure to develop" the facts if "there is lack of diligence, or some greater fault,

14   attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 437 ("comity is not

15   served by saying a prisoner 'has failed to develop the factual basis of a claim' where he was

16   unable to develop his claim in state court despite diligent effort."). *See also Palmateer*, 397 F.3d

17   at 1241 ("an exception to this general rule exists if a petitioner exercised diligence in his efforts

18   to develop the factual basis of his claims in state court proceedings"). The petitioner must have

19   "made a reasonable attempt, in light of the information available at the time, to investigate and

20   pursue claims in state court." *Williams*, 529 U.S. at 435. "Diligence will require in the usual

21   case that the prisoner, at a minimum, seek an evidentiary hearing in the state court in the manner

22   prescribed by state law." *Id.* at 437. If the petitioner has failed to develop the facts in state

23   court, the court must deny a hearing unless the applicant establishes one of the two narrow

24   exceptions set forth in section 2254(e)(2)(A) & (B).

25   If the applicant has not "failed to develop" the facts in state court, the district court may

26   proceed to consider whether a hearing is appropriate, or required under *Townsend v. Sain*, 372

51

U.S. 293 (1963).  *Baja*, 187 F.3d at 1077.  In *Townsend*, the Supreme Court held that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing;[23] or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.  372 U.S. at 313.  If the petitioner "can establish any one of [the *Townsend* factors], then the state court's decision was based on an unreasonable determination of the facts and the federal court can independently review the merits of that decision by conducting an evidentiary hearing."  *Earp*, 431 F.3d at 1167 (9th Cir. 2005) (citing *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004)).

The next step in determining whether an evidentiary hearing is appropriate is a showing that petitioner has a "colorable claim for relief and has never been afforded a state or federal hearing on this claim."  *Earp*, 431 F.3d at 1167 (citing *Insyxiengmay*, 403 F.3d at 670; *Stankewitz v. Woodford*, 365 F.3d 706, 708 (9th Cir. 2004); and *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief."  *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).  The Ninth Circuit Court of Appeals has stressed that a petitioner "only needs to allege a *colorable* claim for relief which is 'a low bar.'"  *Earp*, 431 F.3d at 1170 (emphasis in original).  Thus, a hearing is required if: "(1)

---

[23] The fifth factor was overruled in *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  In *Keeney*, the Court held that a petitioner who failed to develop facts in state court must show cause and prejudice.  The Supreme Court has held that Congress codified the *Keeney* "failure to develop" standard in the first clause of §2254(e)(2).  *Williams*, 529 U.S. at 434.  Therefore, if petitioner meets the "failure to develop" standard in step one of this analysis, he has satisfied the concerns of *Keeney* and the court may use the fifth factor in determining whether or not to hold an evidentiary hearing.

1  [the petitioner] has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did

2  not receive a full and fair opportunity to develop those facts [.]"  *Williams v. Woodford*, 384 F.3d

3  567, 586 (9th Cir. 2004).  In *Schriro*, the Supreme Court announced that in determining whether

4  to grant an evidentiary hearing the federal court must apply the AEDPA deferential standards to

5  legal and factual questions necessarily reached by the state courts.  127 S.Ct. at 1940.  Thus, for

6  example, if a state court's conclusion that a petitioner did not suffer prejudice from the actions of

7  his counsel is not unreasonable, no evidentiary hearing would be necessary.  *Id.*

8       The court notes that many of the facts petitioner wishes to establish at an evidentiary

9  hearing have already been established by the filing of exhibits.  The letters petitioner filed that

10  were between his habeas counsel and his trial counsel (Pet., Ex. E.) show that petitioner's trial

11  counsel explained his decisions with regard to the admission of petitioner's prior conviction and

12  petitioner's decision whether to testify.  *Id.*  Petitioner has included his own declaration, which

13  covers the same events.  Pet., Ex. F.  Petitioner has also filed the letters in mitigation which he

14  argues his counsel should have produced at the sentencing proceedings.  Pet., Ex. H.  These

15  exhibits obviate, in part, the need for an evidentiary hearing.  As stated in *Williams*, 384 F.3d at

16  590-591:

17          We have previously held that a district court in a habeas corpus
            proceeding "need not conduct full evidentiary hearings," but may
18          instead "expand the record ... with discovery and documentary
            evidence."  *Watts v. United States*, 841 F.2d 275, 277 (9th Cir.
19          1988) (per curiam) (denying a habeas corpus petitioner's
            contention that the district court erred in resolving a claim based
20          on contradictory affidavits and interrogatories without an
            evidentiary hearing at which oral testimony could be provided).
21
                                    ***
22
            Other circuits have similarly held that "there is a permissible
23          intermediate step that may avoid the necessity of an expensive and
            time consuming hearing in every [habeas corpus] case.  It may
24          instead be perfectly appropriate, depending upon the nature of the
            allegations, for the district court to proceed by requiring that the
25          record be expanded to include letters, documentary evidence, and,
            in an appropriate case, even affidavits."  *Chang v. United States*,
26          250 F.3d 79, 86 (2nd Cir. 2001) (finding no abuse of discretion

1    when the district court dismissed the petitioner's claim without an
     evidentiary hearing with live witnesses) (citing *Raines v. United*
2    *States*, 423 F.2d 526, 529-30 (4th Cir.1970)); see also *Blackledge*,
     431 U.S. at 81-82, 97 S.Ct. 1621 ("[A]s is now expressly provided
3    in the Rules Governing Habeas Corpus Cases, the district judge ...
     may employ a variety of measures in an effort to avoid the need for
4    an evidentiary hearing . . . In short, it may turn out . . . that a full
     evidentiary hearing is not required."); *Spreitzer v. Peters*, 114 F.3d
5    1435, 1456 (7th Cir. 1997) (same).

6                                    * * *

7    However, in construing *Blackledge*, our circuit and the Second
     Circuit have found no abuse of discretion when the district court
8    "conclude[d] that [a full evidentiary] hearing would not offer any
     reasonable chance of altering its view of the facts." *Chang*, 250
9    F.3d at 86; *Watts*, 841 F.2d at 277 (finding that, in the case at
     hand, the issue of credibility could be conclusively decided on the
10   basis of documentary testimony and evidence in the record).

11           Fair and complete consideration of petitioner's claims can and is being had by

12   considering the record, along with the exhibits supporting his claims of ineffective assistance of

13   counsel.  An evidentiary hearing is not necessary to further develop the facts of petitioner's

14   claims.  In addition, for the reasons described above, petitioner has failed to demonstrate that his

15   counsel's actions constitute deficient performance or that he suffered prejudice as a result.  Even

16   assuming the truth of the facts petitioner seeks to introduce at an evidentiary hearing, he could

17   not obtain federal habeas relief because the state court's decision that petitioner's counsel did not

18   render ineffective assistance is not an unreasonable determination of the facts under

19   § 2254(d)(2).  *See Schriro*, 127 S.Ct. at 1944.  For these reasons, an evidentiary hearing is not

20   appropriate in this case.

21           Accordingly, it is hereby ORDERED that petitioner's December 30, 2004 request for an

22   evidentiary hearing is denied.

23           Further, it is hereby RECOMMENDED that petitioner's application for a writ of habeas

24   corpus be denied.

25           These findings and recommendations are submitted to the United States District Judge

26   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

                                              54

after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 15, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE